[Cite as *State v. Peterson*, 2012-Ohio-250.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 25592 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| CHARLES R. PETERSON | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 10 02 0316 (B) |

DECISION AND JOURNAL ENTRY

Dated: January 25, 2012

MOORE, Judge.

{¶1}    Appellant, Charles R. Peterson, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms in part, reverses in part and remands this matter to the trial court further proceedings consistent with this opinion.

I.

{¶2}    Abdulmahdi Al Garawi sold "knock-off" Air Jordan tennis shoes out of his van at various locations. On January 30, 2010, three men robbed Al Garawi at gunpoint in Akron, Ohio. The men absconded with Al Garawi's van, his inventory of shoes, and various other items that were on his person and in his vehicle. Several months later, Al Garawi passed away due to circumstances unrelated to the January 30, 2010 robbery. Thus, he was unavailable to testify in the prosecution of this case.

{¶3}    On February 17, 2010, Charles Peterson, Edroy "Buddy" McCormick, and Stephan "Tone/Tony" Green were indicted on the following charges in relation to the January

30, 2010 robbery: (1) aggravated robbery, in violation of R.C. 2911.01(A)(1), with an attendant firearm specification pursuant to R.C. 2941.141, (2) robbery, in violation of R.C. 2911.02(A)(1)/(2), (3) grand theft, in violation of R.C. 2913.02(A)(1), and (4) disrupting public services in violation of R.C. 2909.04(A)(3). Peterson was further indicted on two counts of receiving stolen property, in violation of R.C. 2913.51(A). The defendants were tried separately. Prior to Peterson's jury trial and upon motion of the State, the trial court dismissed the charge against him for disrupting public services. The jury returned guilty verdicts on each of the remaining counts. The trial court merged the robbery count with the aggravated robbery count for sentencing purposes and imposed a three-year term of incarceration on the aggravated robbery count, a one-year term of incarceration on the grand theft count, and a one-year term of incarceration on each of the receiving stolen property counts, to be served concurrently. The trial court further imposed a mandatory three-year term of incarceration for the firearm specification, to be served consecutively with the above sentences, for a total term of incarceration of six years.

{¶4} Peterson timely filed a notice of appeal and presents three assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

"THE TRIAL COURT ERRED IN DENYING [PETERSON]'S CRIM. R. 29 MOTION AS THE STATE PRESENTED INSUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION."

{¶5} In his first assignment of error, Peterson argues that his convictions were not supported by sufficient evidence. We do not agree.

{¶6} A motion pursuant to Crim.R. 29 tests the sufficiency of the evidence presented by the State. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *Id.* When considering a challenge to the sufficiency of the evidence, the court must determine whether the prosecution has met its burden of production. *Id.* at 390 (Cook, J. concurring). In making this determination, an appellate court must view the evidence in the light most favorable to the prosecution:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶7} Here, Peterson was convicted of aggravated robbery, theft, and receiving stolen property. R.C. 2911.01 (A)(1) sets forth the offense of aggravated robbery as follows,

> "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
>
> "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]"

{¶8} The offense of grand theft is set forth within R.C. 2913.02(A)(1), which provides,

> "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> "(1) Without the consent of the owner or person authorized to give consent[.]"

{¶9} Peterson was additionally convicted of receiving stolen property in violation of R.C. 2913.51(A), which provides,

"(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."

{¶10} Further, the trial court instructed the jury on complicity. Peterson's convictions based upon a theory of complicity are permissible under R.C. 2923.03(F), which provides that "[a] charge of complicity may be stated in terms of this section, or in the terms of the principal offense." Ohio's complicity statute provides,

"(A) No person acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"(1) Solicit or procure another to commit the offense;

"(2) Aid or abet another in committing the offense;

"(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

"(4) Cause an innocent or irresponsible person to commit the offense." R.C. 2923.03(A).

{¶11} In order to support a conviction based upon a defendant's complicity through "aiding and abetting,"

"[T]he evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime." *State v. Johnson*, 93 Ohio St.3d 240, 245 (2001).

{¶12} Therefore, to be complicit through aiding and abetting, the accused must have taken some role in causing the commission of the offense. "[T]he mere presence of an accused at the scene of the crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widner*, 69 Ohio St.2d 267, 269 (1982).

{¶13} As part of the State's case-in-chief, it produced the testimony of McCormick, Raed Mansour, Officer Daniel Murphy, Officer Todd Sinsley, Sergeant Patrick Dugan, Dennis

Miller, and Sergeant David Garro. McCormick testified that on January 30, 2010, he called Al Garawi and arranged to meet him on Seward Street in Akron, Ohio to purchase some shoes. Repeatedly in his testimony, McCormick denied that the he, Green and Peterson had "a plan" to rob Al Garawi. However, during redirect examination McCormick affirmed that the three had spoken about robbing Al Garawi.

{¶14} McCormick, Green, and Peterson then met with Al Garawi at his van on Seward Street. Green had a gun, which he pointed at Al Garawi. McCormick grabbed Al Garawi and went through his pockets. McCormick, Green, and Peterson then left Seward Street in Al Garawi's van, which contained many pairs of shoes. Green drove the van to Bisson Avenue, approximately one block from Peterson's home on Bellevue Avenue. Green, McCormick and Peterson then carried the shoes that Al Garawi had in his van into Peterson's basement. After dividing the shoes among them, McCormick left on foot with approximately twenty pairs of shoes. McCormick threw out in Peterson's trash can the shoes he had been wearing prior to the robbery. McCormick testified that his shoe size is between a 12 and a 13.

{¶15} Raed Mansour testified that he is Al Garawi's brother-in-law. After Al Garawi was robbed, he obtained a ride to Mansour's place of business. Al Garawi told Mansour that he had just been robbed at gun point. Mansour called 911 and handed the telephone to Al Garawi, who reported the robbery to law enforcement.

{¶16} Officer Daniel Murphy testified that he is a patrolman for the Akron Police Department. While on duty on January 30, 2010, he received a "Be On the Look-Out for" ("BOLO") alert regarding a van that was stolen during a robbery that afternoon. During his patrol, he noticed a van matching the description in a driveway at a vacant residence on Bisson Avenue. He verified the license plate number of the van matched the license plate number of the

stolen vehicle, and radioed the match into the police station. There was snow on the ground that day, and he could see footprints leading westbound from the vehicle. Other officers arrived to assist Officer Murphy's investigation.

{¶17} Officer Todd Sinsley testified that he is one of the officers who arrived at Bisson Avenue to assist Officer Murphy. He saw the footprints in the snow, one pair of prints containing a distinctive "circle pattern." He and his partner followed the prints which eventually led to a trash can at 792 Bellevue Avenue. Inside the trash can were several shoeboxes and two pairs of tennis shoes, which were marked as size 9 and size 13.

{¶18} Officer Sinsley and his partner secured the 792 Bellevue residence, and, upon the arrival of other officers, Officer Sinsley knocked at the side door of the residence. Gussy Peterson answered the door and confirmed that three young men, her grandsons, lived in her home. Gussy Peterson agreed to allow the officers to enter her home to verify that her grandsons were not at home. In the basement, the officers saw a pill bottle with Al Garawi's name on it and shoeboxes. Officer Sinsley then left to obtain a search warrant, and after a search of the home, the officers found several pairs of new tennis shoes of the type that Al Garawi sold, Al Garawi's wallet, and other personal effects and papers that belonged to Al Garawi in the basement and bedrooms of the Peterson home.

{¶19} Sergeant Patrick Dugan testified that he is an officer with the Akron Police Department and heard that officers had located a stolen vehicle on January 30, 2010. Sergeant Dugan went to 792 Bellevue and spoke with Gussy Peterson after the officers had secured the house to await the search warrant. At this time, Gussy Peterson told Sergeant Dugan that, earlier that day, she had witnessed two of her grandsons and a third party that she did not know carry boxes into her basement. Gussy Peterson was called by the State to testify, but on the stand she

stated that she could not recall this conversation with Sergeant Dugan and denied making this statement to him.

{¶20} Dennis Miller testified that he is the grandson of Gussy Peterson and the brother of Charles Peterson. On January 30, 2010, he and Charles were at home most of the day. Miller left once to go play basketball, but, upon finding the gym closed, returned home. Later, he and Charles purchased some shoes from McCormick and another man who had come to their house. Miller stated that he and Peterson purchased eight pairs of shoes for a total of $200.00 from McCormick. Miller then threw out his old basketball shoes in the trash can, and left again to play basketball in a pair of his newly purchased shoes. Finding the gym to still be closed, Miller returned home, and the police were surrounding his house. After confirming that he lived there, police arrested Miller. Miller identified one pair of shoes that police had found in the trash as the shoes he had thrown out. Miller testified that he and Peterson wear the same size shoe, approximately 8.5 to 9.

{¶21} Sergeant David Garro testified that he is an officer with the Akron Police Department. On January 30, 2010, he interviewed Al Garawi after the robbery. Al Garawi was able to provide only a few descriptive details regarding the three men who robbed him. However, while they were speaking, Sergeant Garro received notification that officers had located Al Garawi's van and that footprints from the van led to 792 Bellevue Avenue. Sergeant Garro obtained the names of three men residing at 792 Bellevue from a computer search and then constructed three photo arrays, each including one of the men living at the Bellevue address: Charles Peterson, Deon Miller, and Dennis Miller. Al Garawi was not able to identify any of the men. Sergeant Garro then drove to the Bellevue residence to check in with the investigating officers, and he then learned that police had taken Dennis Miller into custody. Sergeant Garro

returned to the police station to await Dennis Miller's arrival. When Dennis Miller was brought into the police station, Officer Garro interviewed him. Dennis Miller denied that he had committed a robbery and stated that he did not know anything about the shoes found in his home.

{¶22} Later, Sergeant Garro received a call from Charita Peterson, the mother of Charles Peterson and Dennis and Deon Miller. Charita Peterson told him that he had the "wrong son" in custody. She had learned that "Buddy" had carried items into the Bellevue residence on January 30, 2010, and she identified "Buddy" as a friend of her son Charles Peterson. With the assistance of Charita Peterson, Sergeant Garro was able to identify "Buddy" as Edroy McCormick and to locate Stephan Green. Al Garawi identified both McCormick and Green as two of the men who robbed him. Sergeant Garro later interviewed McCormick, who eventually told him that he, Green and Peterson robbed "the shoe man," and afterward went to Peterson's house. The State called Charita Peterson to testify, and she confirmed much of her assistance in the robbery investigation, but denied that her statements were meant to implicate any involvement of Charles in the robbery.

{¶23} Based upon the above testimony and exhibits, when viewed in the light most favorable to the State, there was sufficient evidence to support Peterson's convictions. The State provided evidence sufficient for a reasonable jury to determine that Peterson cooperated with Green and McCormick in the gun-point robbery of Al Garawi, in the theft of Al Garawi's van, shoes, and other belongings, and that Peterson received or retained Al Garawi's property which he knew or had reason to know belonged to Al Garawi.

{¶24} Accordingly, Peterson's first assignment of error is overruled.

**ASSIGNMENT OF ERROR II**

"THE JURY CREATED A MANIFEST MISCARRIAGE OF JUSTICE AS THE
VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶25} In his second assignment of error, Peterson argues that his convictions were against the manifest weight of the evidence. We do not agree.

{¶26} When a defendant asserts that his conviction is against the manifest weight of the evidence,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986).

{¶27} In making this determination, this Court is mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." *State v. Shue*, 97 Ohio App.3d 459, 466 (9th Dist. 1994), citing *Ostendorf-Morris Co. v. Slyman*, 6 Ohio App.3d 46, 47 (8th Dist. 1982) and *Crull v. Maple Park Body Shop*, 36 Ohio App.3d 153, 154 (12th Dist. 1987).

{¶28} At trial, Charles Peterson testified on his own behalf. On the morning of January 30, 2010, he received a telephone call from McCormick, who inquired as to whether Peterson was interested in purchasing some shoes. Peterson and his brother had previously purchased "knock-off" Air Jordan tennis shoes from McCormick and were interested in purchasing more. Later that day, McCormick and another man that Peterson did not know came to his house in a blue van. They carried several trash bags full of shoes into Peterson's basement, which they emptied onto the floor. Peterson saw a pill bottle fall out of a bag, but did not know anything about it. Peterson and his brother Dennis Miller selected eight pairs of shoes. They paid McCormick $200.00 for the shoes, and they took the shoes that they had purchased upstairs to a bedroom that they shared. The unknown man then left in the van, and McCormick left on foot after using Peterson's house phone. Peterson threw away the shoeboxes from the shoes he and Miller had purchased and then left the residence to walk to his girlfriend's home.

{¶29} The State moved for Peterson's testimony to be excluded in whole or in part due to the defense's failure to file a notice of alibi. At the close of the evidence, the trial court instructed the jury to disregard Peterson's testimony that he was home at the time of the robbery.

{¶30} In support of his manifest weight argument, Peterson argues that the State's witnesses were not credible. Specifically, Peterson cites to numerous discrepancies in McCormick's testimony. Peterson also argues that McCormick's testimony was unreliable due to his incentive to testify unfavorably toward Peterson based upon McCormick's plea agreement. Peterson lastly argues that Charita and Gussy Peterson's testimony and their prior statements to law enforcement were unreliable because neither individual witnessed the robbery of Al Garawi.

{¶31} However, the jury is in the best position to judge the credibility of witnesses because the jury "is best able to view witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Cook*, 9th Dist. No. 21185, 2003-Ohio-727, at ¶30, quoting *Giurbino v. Giurbino*, 89 Ohio App.3d 646, 659 (8th Dist. 1993). As to the inconsistencies in the testimony, "the jury is free to believe all, part, or none of the testimony of each witness." *State v. Cross*, 9th Dist. No. 25487, 2011-Ohio-3250, at ¶35, quoting *Prince v. Jordan*, 9th Dist. No. 04CA008423, 2004-Ohio-7184, at ¶35, citing *State v. Jackson*, 86 Ohio App.3d 29, 33 (4th Dist. 1993). We cannot say the jury's resolution of these inconsistencies was unreasonable. See *State v. Peasley,* 9th Dist. No. 25062, 2010-Ohio-4333, at ¶18, citing *State v. Morgan*, 9th Dist. No. 22848, 2006-Ohio-3921, at ¶35 ("A conviction is not against the manifest weight because the jury chose to credit the State's version of events."). Further, the evidence does not support Peterson's argument that McCormick was induced to testify unfavorably toward Peterson. Instead, the

record indicates only that McCormick's plea agreement was conditioned upon his testifying "truthfully."

{¶32} After reviewing the entire record, weighing the inferences and examining the credibility of witnesses, we cannot say that this is the exceptional case where the jury clearly lost its way and created a manifest miscarriage of justice in finding Peterson guilty. Accordingly, Peterson's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

> "THE COURT'S JURY INSTRUCTION, VERDICT, AND SENTENCE ON THE GUN SPECIFICATION WAS CONTRARY TO LAW AND AMOUNTED TO PLAIN ERROR."

{¶33} In his third assignment of error, Peterson argues, and the State concedes that, because his indictment did not include a three-year firearm specification, the instruction, verdict, and sentence on the three-year firearm specification constituted plain error. We agree.

{¶34} No objection was made as to the jury instructions, verdict form, or sentence relative to the three-year firearm specification. Where a party has failed to raise an objection in the trial court, the objection may still be assigned as error on appeal if a showing of plain error is made. *State v. Hairston,* 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶9; Crim.R. 52(B). However, notice of a plain error is taken with the utmost caution and only to prevent a manifest miscarriage of justice. *State v. Bray,* 9th Dist. No. 03CA008241, 2004-Ohio-1067, at ¶12. Therefore, we will not reverse the trial court decision unless it has been established that the trial court outcome would have clearly been different but for the alleged error. *Id.*

{¶35} Within Peterson's indictment, the Summit County Grand Jury charged Peterson with a firearm specification attendant to the aggravated robbery charge as follows,

> "The Grand Jurors further find and specify that * * * Charles R. Peterson * * * had a firearm, as defined in Section 2923.11 of the Ohio Revised Code, on or

about [his] person or under [his] control while committing the offense, in violation of Section 2941.141 of the Ohio Revised Code, contrary to the form of the statute in such a case made and provided and against the peace and dignity of the State of Ohio."

{¶36} R.C. 2941.141(A) provides,

"Imposition of a one-year mandatory prison term upon an offender under division (B)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense."

{¶37} In contrast, R.C. 2941.145(A) provides,

"Imposition of a three-year mandatory prison term upon an offender under division (B)(1)(a) of Section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

{¶38} Here, the trial court imposed a mandatory three-year prison term for "possession of a firearm." However, this sentence is precluded by law pursuant to R.C. 2941.145 because the indictment referenced R.C. 2941.141 and it did not set forth the proper specification that Peterson displayed, brandished, indicated that he possessed, or used the firearm in the commission of the offense.

{¶39} Accordingly, Peterson's third assignment of error is sustained, the three year sentence on the firearm specification is reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.

III.

{¶40} Peterson's first and second assignments of error are overruled. Peterson's third assignment of error is sustained. The judgment of the Summit County Court of Common Pleas

is affirmed in part, reversed in part and remanded to the trial court for further proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

MARTHA HOM, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.