[Cite as *Lynch v. Greenwald*, 2012-Ohio-2479.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

VICTORIA LYNCH, et al.

    Appellees

    v.

ALICE J. GREENWALD

    Appellant

C.A. No.     26083

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2009 10 7815

DECISION AND JOURNAL ENTRY

Dated: June 6, 2012

---

WHITMORE, Presiding Judge.

{¶1}    Defendant-Appellant, Alice Greenwald ("Mother"), appeals from the judgment of the Summit County Court of Common Pleas, in favor of Plaintiff-Appellees, Victoria Lynch ("Daughter"), Jacob Lynch ("Son"), and Melody Lenigar, the executrix for the estate of Steven Lynch. This Court affirms.

I

{¶2}    Mother and Steven Lynch ("Father") agreed to dissolve their marriage and enter into a separation agreement in August 2000. The parties purchased a life insurance policy through Primerica Life Insurance Company ("Primerica") while they were married, but Father became the policy's sole owner at the time of the dissolution. By the terms of the separation agreement, Mother would remain the designated beneficiary on the policy "for the benefit of [Daughter and Son], so long as [Father] ha[d] an obligation to support the children." Further, Father's Primerica policy would remain in effect for both Daughter and Son until Son reached 18

years of age and no longer attended high school. Father later was diagnosed with terminal cancer and died on April 11, 2009. At the time of his death, Daughter was 22 and Son was 16.

{¶3} A dispute over the rightful recipient of the proceeds from Father's policy arose after Father's death. According to Daughter, Father signed a change in beneficiary form before he died, naming Daughter as the policy beneficiary. According to Mother and Primerica, Father never submitted a change to Primerica and Mother remained the named beneficiary. Mother submitted a claim form to Primerica after Father died, and Primerica issued the proceeds of Father's policy to Mother. Mother only wrote two checks from the proceeds she received before Primerica froze the account. Both of the checks benefitted Mother.

{¶4} Daughter, Son, and the executrix of Father's estate brought suit against Mother for conversion, unjust enrichment, breach of the separation agreement, and breach of the fiduciary duties imposed by operation of law pursuant to a constructive trust theory.[1] The jury found in Mother's favor on the separation agreement claim, but found Mother liable for conversion, unjust enrichment, breach of fiduciary duty, punitive damages, and attorney fees. Initially, the jury awarded zero dollars on the conversion claim as well as zero dollars in punitive damages. The trial judge then instructed the jurors that, if they intended for the plaintiffs to recover their attorney fees as indicated by one of the interrogatories and one of the general verdict forms, their zero dollar damage awards might preclude an award of attorney fees. The trial judge asked the jurors to review their verdict forms and interrogatories again to make sure they accurately reflected the intent of the jury. The jury then awarded $200,923.41 in damages

---

[1] The complaint also contains a negligence claim and names Primerica and one of its agents as defendants. We do not discuss any additional claims or parties because those matters were resolved below and are not relevant to this appeal.

on the conversion claim and $10,000 in punitive damages. Subsequently, the trial court awarded $70,307.80 in attorney fees for a total award of $281,231.21.

{¶5} Mother now appeals from the trial court's judgment and raises three assignments of error for our review.

II

Assignment of Error Number One

IT WAS AN ABUSE OF DISCRETION FOR THE TRIAL COURT TO INSTRUCT THE JURY TO RECONSIDER ITS VERDICTS WHERE THE ORIGINAL VERDICTS WERE VALID AND WHOLLY CONSISTENT WITH THE JURY INTERROGATORIES.

{¶6} In her first assignment of error, Mother argues that the trial court erred when it allowed the jury to reconsider its verdict. She argues that the jury's interrogatories were consistent with the general verdict and, in the absence of an inconsistency, the court lacked the authority to resubmit the issues the jury.

{¶7} "Civ.R. 49(B) details the procedures a trial court must follow when the parties submit interrogatories to go to the jury upon the court's approval. The purpose of using interrogatories is to test the general verdict." *Colvin v. Abbey's Restaurant, Inc.*, 85 Ohio St.3d 535, 538 (1999). Ideally, the interrogatories will complement the general verdict. *Id.* If an inconsistency does exist between the completed interrogatories and general verdict, Civ.R. 49(B) affords a trial court three options. Specifically, the court may "(1) enter judgment in accordance with the interrogatory answers, (2) return the jury for further consideration of the interrogatories and the general verdict, or (3) order a new trial." *Colvin* at paragraph one of the syllabus. "The choice of one of the three options lies within the sound discretion of the trial court." *Id.* "Before the court applies [Civ.R. 49(B)], however, it must be satisfied that apparent inconsistencies between interrogatory and verdict are not reconcilable." *Capital Control, Inc. v. Sunrise Point,*

*Ltd.*, 6th Dist. No. E-03-046 & E-04-008, 2004-Ohio-6309, ¶ 34. "When an interrogatory response is inconsistent and irreconcilable with the general verdict, * * * 'the clear, best choice [is] to send the jury back for further deliberations.'" *Segedy v. Cardiothoracic & Vascular Surgery of Akron, Inc.*, 182 Ohio App.3d 768, 2009-Ohio-2460, ¶ 26 (9th Dist.), quoting *Shaffer v. Maier*, 68 Ohio St.3d 416, 421 (1994).

{¶8} When the jury first returned after deliberations, the jurors responded "Yes" in answering both of the following interrogatories:

> JURY INTERROGATORY NO. 5[:] Do you find by clear and convincing evidence that the plaintiffs are entitled to punitive damages from [Mother]?
>
> JURY INTERROGATORY NO. 6[:] If at least six members of the jury answered "yes" to the previous interrogatory and signed their names on that interrogatory, are the plaintiffs entitled to recover from [Mother] attorney fees they have incurred in prosecuting this case?

The jury also completed the general verdict form for attorney fees that provided: "We the jury find that plaintiffs are entitled to attorney fees." Nevertheless, the jury awarded plaintiffs zero dollars in punitive damages. The trial court determined that the interrogatories and the general verdict were inconsistent because the zero dollar punitive damages award would negate any award of attorney fees. Accordingly, the trial court asked the jurors to return to the jury room for further consideration. *See* Civ.R. 49(B).

{¶9} Mother argues that the court erred by returning the jurors to the jury room because the interrogatories and general verdict could be reconciled. She avers that a zero dollar award on punitive damages is not necessarily inconsistent with the jury's belief that plaintiffs were entitled to attorney fees. According to Mother, whether plaintiffs would recover attorney fees was a matter for the trial court to determine at a separate hearing.

{¶10} Initially, we note that Mother did not object when opposing counsel posed the inconsistency to the court, when the court instructed the jury regarding the inconsistency, or when the court ordered the jury to return to the jury room. A discussion took place at sidebar before the court instructed the jury, but the discussion was not recorded. Moreover, when the judge finished instructing the jury and asked the attorneys if there were any issues before he returned the jury for further consideration, Mother's counsel replied in the negative. The record supports the conclusion that Mother forfeited her objection to the trial court's determination that the verdict and the interrogatories were inconsistent. Even so, plain error may lie if the trial court erroneously concluded an inconsistency existed and returned the jury for further deliberation in the absence of an actual inconsistency. *See Eberly v. A-P Controls, Inc.*, 61 Ohio St.3d 27, 36 (1991) (unreliable verdict due to defect in interrogatories "though not objected to, results in a manifest miscarriage of justice and, as such, constitutes plain error"). We, therefore, review the trial court's determination for plain error. *See Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), syllabus (plain error in civil cases defined).

{¶11} Although the amount of attorney fees plaintiffs would receive was not a jury question, the jury specifically found that plaintiffs were entitled to fees. The jurors made that finding in both an interrogatory (Interrogatory Number 6) and a general verdict form dedicated to the award of attorney fees. The jury also determined that plaintiffs were entitled to punitive damages in an interrogatory (Interrogatory Number 5). Interrogatory Number 5 also instructed the jurors: "If at least six members of the jury have answered 'yes' and signed their names above, please insert a punitive damages award on the punitive damages verdict form, sign the form, and proceed to Interrogatory No. 6." The jurors answered "yes" to the interrogatory, entered a zero

dollar amount on the punitive damages verdict form, and proceeded to complete Interrogatory No. 6.

**{¶12}** Apart from the fact that the jury determined in Interrogatory Number 5 that plaintiffs were entitled to punitive damages and then did not award any punitive damages, the zero dollar punitive damage award conflicts with the jury's determination in Interrogatory Number 6 that plaintiffs were entitled to attorney fees. Any award of attorney fees to plaintiffs would be contingent upon an award of punitive damages. *See K.R.G. Inc. v. Patel*, 9th Dist. Nos. 24083 & 24190, 2008-Ohio-5446, ¶ 8-9; *Pinkerton v. Thompson*, 174 Ohio App.3d 229, 2007-Ohio-6546, ¶ 23-24. As such, the trial court did not commit plain error when it determined that the interrogatories and general verdict were inconsistent. *See Coffman v. Stoll*, 9th Dist. No. 22189, 2005-Ohio-711 ¶ 10 (total verdict award inconsistent with percentage finding of contributory negligence); *Capital Control, Inc.*, 2004-Ohio-6309, at ¶ 40 (zero damages finding inconsistent with general verdict award of punitive damages and attorney fees). Mother's first assignment of error is overruled.

### Assignment of Error Number Two

> THE TRIAL COURT ABUSED ITS DISCRETION BY COMMENTING TO THE JURY ON THE LEGAL BASIS OF PLAINTIFFS' OBJECTION AND EXPLAINING TO THE JURY PLAINTIFFS' POSITION ON A MATTER OF LAW, WHICH INFLUENCED THE JURY'S RECONSIDERATION AND PREJUDICED DEFENDANT.

**{¶13}** In her second assignment of error, Mother argues that the trial court erred when it addressed the jury regarding the inconsistency between the interrogatories and the verdict. We disagree.

**{¶14}** As previously noted, Mother's counsel did not object at any point during the discussion about the verdict inconsistency or during the trial court's comments to the jury.

Accordingly, we review Mother's argument solely for plain error. *See Goldfuss*, 79 Ohio St.3d at syllabus.

> When instructing the jury regarding the need to reconcile the interrogatories and verdict, the trial court must be careful not to suggest or imply that the jury came to the wrong conclusion. The court should encourage the jury to consider whether the interrogatory answers represent their true intentions. Ideally, the trial court will instruct the jury that the interrogatory responses and general verdicts should be reconciled with each other rather than insisting that they must reconcile them. The trial court should also make it clear that neither the interrogatories nor the verdict controls the other, but that the two should be harmonious.

(Internal quotations and citations omitted.) *Segedy*, 182 Ohio App.3d 768, 2009-Ohio-2460, at ¶ 36. "A jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights." *Perez v. Falls Financial, Inc.*, 87 Ohio St.3d 371, 376 (2000), quoting *Becker v. Lake Cty. Mem. Hosp. West*, 53 Ohio St.3d 202, 208 (1990).

{¶15} When the jurors returned from deliberation, plaintiffs objected to the alleged inconsistency between the interrogatories and the general verdict. The trial court offered the following explanation to the jury:

> The issue, folks, is that when there was a finding in favor of the plaintiffs on the issue of punitive damages, but the zero dollar award, counsel is concerned that that may not permit an award to be made for attorney fees.

A sidebar discussion then took place. After the sidebar discussion, the court further addressed the jury:

> Members of the jury, the Court is going to ask you to briefly return to the jury room just to give consideration of one, I think, fairly limited issue.

> Counsel are concerned that if it was your intent to award attorney fees based on the finding that you made * * * for the plaintiff for conversion or * * * verdict for breach of fiduciary duty, that a finding of zero dollars for punitive damages could make the effort to award attorney fees ineffective. Likewise, the * * * finding for plaintiff on conversion with the award of zero dollars could be ineffective as well.

So what the Court is going to ask you to do is to give consideration to whether * * * on the punitive damage interrogatory and verdict form you wished to make a finding of a specific amount of punitive damages. The Court is not going to suggest that you should or should not or suggest to you any amount. If you make the determination to adhere to your finding of zero punitive damages, then do so with the understanding that one side of the case will be contending that no attorney fees may be awarded under the circumstances.

Mother argues that the trial court erred in its instruction because: (1) it was inappropriate for the court to explain the legal issue to the jury, and (2) the judge improperly influenced the jury by interjecting his own opinion into his comments.

{¶16} In *Coffman*, this Court considered a trial court's response to an alleged inconsistency between a general verdict award and two interrogatories defining the negligence and contributory negligence percentages of the plaintiff and defendant. *Coffman*, 2005-Ohio-711, at ¶ 9-10. After the jury's second attempt to reconcile the alleged inconsistency:

the judge explained that the total verdict of $492,000 would be reduced by the amount of the plaintiff's negligence, 35%. In response, the jury foreman explained that the jury had been unaware of that reduction, and therefore, the second attempt was not their verdict. The judge dismissed the jury for the weekend, with instructions that they would reconvene for further deliberations on the following Tuesday morning.

*Id.* at ¶ 10. We upheld the trial court's actions given the inconsistency of the verdict and found "further deliberations to be a proper and prudent response." *Id.*

{¶17} The explanation the trial court gave to the jury in *Coffman* is no different from the explanation the trial judge here gave to the jury. The trial court simply explained the legal effect of the jury's answers to the jury so that the ultimate verdict could "represent [the jurors'] true intentions." *Segedy*, 182 Ohio App.3d 768, 2009-Ohio-2460, at ¶ 36. The trial court did not commit plain error when it explained the legal issue to the jurors before returning them to the jury room for further deliberations. *See Coffman* at ¶ 9-10.

{¶18} Further, the trial judge did not impose his personal views. The judge explicitly stated that he was not suggesting whether the jury should or should not change its award. The judge simply asked the jury to deliberate further in order to ensure that the award accurately reflected the actual intent of the jurors. "As a whole, it does not appear that the trial judge was trying to impose [his] will on the jurors." *Perez*, 87 Ohio St.3d at 376. Nor does the record support the conclusion that the court's comments "affected 'the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *Id.* at 377, quoting *Goldfuss*, 79 Ohio St.3d at syllabus. Consequently, Mother's second assignment of error is overruled.

Assignment of Error Number Three

THE JURY'S AWARD OF PUNITIVE DAMAGES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AS THERE WAS NO COMPETENT OR CREDIBLE EVIDENCE OF ACTUAL MALICE ON THE PART OF DEFENDANT ALICE J. GREENWALD.

{¶19} In her third assignment of error, Mother argues that the jury's punitive damage award is against the civil manifest weight of the evidence. Specifically, she argues there was "absolutely no evidence" of actual malice.

{¶20} Before turning to the merits of Mother's argument, we pause to consider the effect of the Ohio Supreme Court's most recent pronouncement on the civil manifest weight standard: *Eastley v. Volkman*, Slip Opinion No. 2012-Ohio-2179. The *Eastley* Court held that "[i]n civil cases, as in criminal cases, the sufficiency of the evidence is quantitatively and qualitatively different from the weight of the evidence." *Eastley* at paragraph two of the syllabus. The Court defined the test for sufficiency as the test from *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. That test recognizes:

> "sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

(Internal citations omitted.) *Thompkins* at 386. While a challenge to the weight of the evidence tests the plaintiff's burden of persuasion, a challenge to the sufficiency of the evidence asks whether the plaintiff has met his or her burden of production by proving each element by a preponderance of the evidence. *Eastley* at ¶ 19. With the foregoing distinction in mind, we turn to Mother's argument.

{¶21} Generally, "an appellant's assignment of error provides this Court with a roadmap to guide our review." *Taylor v. Hamlin-Scanlon*, 9th Dist. No. 23873, 2008-Ohio-1912, ¶ 12. Although Mother captions her assignment of error as a challenge to the manifest weight of the evidence, her argument is that there was "absolutely no evidence" of actual malice. A challenge premised upon a complete lack of evidence is one that tests the burden of production, not the burden of persuasion. Consequently, Mother's argument is that the jury's punitive damage verdict is based on insufficient evidence. Even so, given the caption of Mother's assignment of error and the fact that the Supreme Court clarified the civil manifest weight standard of review after Mother filed her brief, we also consider a challenge based on the weight of the evidence.

{¶22} "[P]unitive damages may be awarded in tort cases involving fraud, insult or malice." *Gilbride v. Fugo*, 9th Dist. No. 12312, 1986 WL 3820, *1 (Mar. 26, 1986). "'Actual malice' for these purposes is '(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm.'" (Emphasis omitted.) *Calmes v. Goodyear Tire & Rubber Co.*, 61 Ohio St.3d 470, 473 (1991), quoting

*Preston v. Murty*, 32 Ohio St.3d 334 (1987), syllabus. Punitive damages are not meant to compensate an injured party. *Arbino v. Johnson & Johnson*, 116 Ohio St.3d 468, 2007-Ohio-6948, ¶ 97. Rather, punitive damages are awarded for the purpose of punishing and deterring certain conduct. *Id.*, quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 651 (1994). The party seeking punitive damages bears the burden of proving his entitlement to them by clear and convincing evidence. *Weber v. Obuch*, 9th Dist. No. 05CA0048-M, 2005-Ohio-6993, ¶ 37-40. Clear and convincing evidence is that "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶23} Melody Lenigar, Father's sister and the executrix of his estate, testified that "everything [Father] had was to go to [Daughter] and [Son]." More specifically, Father intended for Daughter to be the beneficiary on the Primerica policy. Bruce Kline, another family member of Father's, also testified that he listened to Father's plans for his life insurance policy while visiting Father in the hospital. Father was adamant that he wanted his children to receive everything he had and stated that he was taking steps to make "sure that b**** doesn't get my money from my life insurance."

{¶24} Daughter testified that she aided Father in organizing his affairs once it became clear that his time was short. Father executed a power of attorney in favor of Daughter, and she handled his finances from that point forward. Father informed Daughter that she would be named the beneficiary on the Primerica policy and that, when Father died, she only needed to submit a claim. A few days after her Father died, Mother forced a conversation with Daughter about the proceeds of the policy. According to Daughter, Mother claimed the policy belonged to her, but offered to give Daughter her half of the proceeds if Daughter allowed Mother to control

Son's half. When Daughter objected to that arrangement on the basis that it was not what Father had wanted, Mother stated, "[w]ell, your dad broke the law when he changed the beneficiary." Mother later promised that she would allow Daughter to handle the policy and would not interfere. Daughter tried repeatedly to contact Primerica to submit a claim, but Primerica's representatives told Daughter that Primerica's adjusters had yet to release information about the policy and to call back in a few days. Daughter later discovered that Mother had submitted a claim for the policy as the beneficiary and received the policy proceeds once Primerica processed the claim.

{¶25} Daughter testified that Mother had not used the policy proceeds to aid Daughter or Son. Daughter worked full-time and requested a forbearance on her student loans so that she could afford to pay for her apartment and help Son pay for his college tuition. Daughter also purchased a used car for Son, paid for his car insurance, paid for his phone, and changed apartments so that she could live with a roommate and reduce her monthly rent. Meanwhile, Son worked part-time during the school year and full-time in the summer to help with expenses. Daughter testified that Son could not yet register for his next semester of college because she had to wait to receive her bonus before she could make a payment on his outstanding tuition and reduce it to a level that would allow him to register.

{¶26} Son recalled the conversation his Mother had with Daughter shortly after their Father died. Son testified that Mother claimed ownership of the policy and indicated her desire to control it. Before Son left Mother's house to live with his grandparents, he asked Mother if she would help him pay for college. According to Son, Mother's "response was always that it was her money and she could do what she wanted with it." In addition to college expenses, Son

testified that he needed money to pay for extensive dental work he had not yet been able to schedule due to the cost involved.

{¶27} Mother testified that she was the policy beneficiary and that Father never submitted a beneficiary change form to Primerica. According to Mother, she had not used the proceeds to help Daughter and Son with their expenses because they cut off all contact with her, or in Son's case, refused her help. Mother admitted that, by the plain language of her separation agreement with Father, her designation as the policy beneficiary hinged upon Father's continued obligation to pay child support. Even so, when questioned whether the separation agreement required the policy proceeds to be used solely for the benefit of the children, Mother only agreed: "that's the standard legal jargon that was used * * *." Mother claimed that she contacted Primerica to process the claim because she did not think that Daughter was knowledgeable enough to settle Father's affairs, but she never used any of the proceeds to help Daughter and Son with their expenses. Mother admitted that she only wrote two checks from the policy proceeds: one to attempt to purchase a life insurance policy for herself, and one to pay the retainer for her attorney.

{¶28} The record supports the conclusion that Daughter, Son, and the executrix of Father's estate set forth adequate evidence of actual malice. *Thompkins*, 78 Ohio St.3d at 386. Mother's only argument is that there was "absolutely no evidence" that she consciously disregarded anyone's rights or caused substantial harm. Yet, both Daughter and Son set forth evidence that they were struggling financially, Mother knew the insurance proceeds were meant for them, and Mother never used the proceeds to benefit them. In fact, Mother only ever used the proceeds to benefit herself. Based on our review of the record, we conclude there is legally sufficient evidence to support the jury's punitive damages verdict. Moreover, the jury's verdict

is not against the manifest weight of the evidence. Unlike a sufficiency review, a weight of the evidence analysis tests the believability of the evidence. *Eastley*, Slip Opinion No. 2012-Ohio-2179, ¶ 12, quoting *Thompkins*, 78 Ohio St.3d 387.

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

(Emphasis sic.) *Thompkins* at 387. Daughter and Son set forth evidence from which the jury could have believed that Mother wrongfully kept the insurance proceeds and knowingly failed to use them to benefit the children. Although Mother claimed that it was not her intention to misuse the proceeds, the jury was in the best position to gauge the credibility of the witnesses. *State v. Peterson*, 9th Dist. No. 25592, 2012-Ohio-250, ¶ 31. We cannot conclude that the jury's verdict is against the manifest weight of the evidence. Mother's third assignment of error is overruled.

## III

{¶29} Mother's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---
BETH WHITMORE
FOR THE COURT


CARR, J.
MOORE, J.
CONCUR.


APPEARANCES:

TIMOTHY D. MCKINZIE and KERRY G. FULTON, Attorneys at Law, for Appellant.

JAMES R. RECUPERO and MELISSA S. ULRICH, Attorneys at Law, for Appellees.

SABRINA HAURIN, Attorney at Law, for Appellees.