[Cite as *Averback v. Montrose Ford, Inc.*, 2019-Ohio-373.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| BRUCE AVERBACK | | C.A. No. 28875 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| MONTROSE FORD, INC. | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CV 2013-12-5686 |

DECISION AND JOURNAL ENTRY

Dated: February 6, 2019

CALLAHAN, Judge.

{¶1} Montrose Ford, Inc. ("Montrose") appeals from judgment entries of the Summit County Common Pleas Court granting summary judgment in favor of Bruce Averback and awarding him damages and attorney's fees. This Court affirms in part and reverses in part.

I.

{¶2} In March 2013, Montrose purchased a new 2013 Ford F-150 Roush Raptor pickup truck from another dealership in Maryland. Upon receipt, Montrose inspected the truck and discovered that the long block engine was defective and needed replaced. Ford supplied Montrose with a new long block engine under warranty, and Montrose replaced the defective long block engine for a total cost of $5,800.00.

{¶3} In April 2013, Mr. Averback contacted Montrose looking to purchase a Roush truck. Montrose informed Mr. Averback that it had a Roush truck available, and Mr. Averback purchased the truck. The purchase price of the truck was $73,901.65.

**{¶4}** Six months later, the truck began overheating. Mr. Averback took the truck to Montrose where the malfunctioning temperature gauge was replaced under warranty. There was no evidence that this repair was related to the earlier engine repair. While the temperature gauge was being replaced, Mr. Averback traded in the truck at a different Ford dealership for $50,000.00.

**{¶5}** Mr. Averback subsequently obtained all of the service reports from Montrose and discovered that the truck's engine had been replaced under warranty. This fact was not disclosed to him when he purchased the truck.

**{¶6}** On December 5, 2013, Mr. Averback filed a complaint against Montrose alleging various claims for violations of Ohio's Consumer Sales Practices Act ("CSPA"), in addition to claims for fraud, breach of contract, and breach of express warranty. On January 6, 2014, Montrose served an offer to cure upon Mr. Averback's counsel, which was rejected.

**{¶7}** After completing discovery, Mr. Averback filed a motion for partial summary judgment against Montrose as to the issue of liability on the ten CSPA claims. The trial court denied summary judgment as to nine of the CSPA claims and granted Mr. Averback summary judgment on one of the CSPA claims. The trial court found Montrose liable for violating Ohio Adm.Code 109:4-3-16(B)(14) by not disclosing to Mr. Averback, prior to his purchase of the truck, that the factory-installed engine was defective and had been replaced under warranty. Mr. Averback filed an amended complaint, omitting all of his claims except for the CSPA claim based upon Ohio Adm.Code 109:4-3-16(B)(14).

**{¶8}** All that remained for disposition was the issue of damages, which the parties agreed to try to the bench. The magistrate held a damages hearing and found that Mr. Averback was entitled to $2,659.46 in actual damages, trebled to $7,978.38; $500.00 in noneconomic

damages; and attorney's fees. Montrose filed objections to the magistrate's decision, which were overruled. Following an attorney's fees hearing, the magistrate awarded Mr. Averback $23,845.00 in attorney's fees and $2,035.54 for filing fees and costs. The court adopted the magistrate's decision and entered judgment in favor of Mr. Averback.

{¶9} Montrose appeals, raising three assignments of error.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT INCORRECTLY GRANTED [MR.] AVERBACK'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

{¶10} In its first assignment of error, Montrose contends that the trial court erred as a matter of law by incorrectly interpreting Ohio Adm.Code 109:4-3-16(B)(14). According to Montrose, this provision only required it to disclose "existing defects." This Court disagrees.

{¶11} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Pursuant to Civ.R. 56(C), summary judgment is proper if:

> (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶12} Here, the parties agree that there is no genuine issue of material fact. They agree that the factory-installed engine in the truck that Mr. Averback bought from Montrose had been defective and was replaced with a new engine prior to Mr. Averback's purchase of the truck. They further agree that the retail repair cost of the replacement exceeded 6 percent of the

manufacturer's suggested retail price for the truck. Finally, they agree that Montrose did not disclose to Mr. Averback that the defective engine had been replaced.

{¶13} They disagree, however, over whether those undisputed facts entitled Mr. Averback to judgment as a matter of law. Mr. Averback argues that Montrose was legally obligated to disclose the defect pursuant to Ohio Adm.Code 109:4-3-16(B)(14). Montrose argues that it was not legally obligated by the regulation to disclose the defect after it had corrected it. Resolution of the issue turns upon the interpretation of Ohio Adm.Code 109:4-3-16(B)(14).

{¶14} Briefly, by way of background, R.C. 1345.02(B) contains a non-exclusive list of acts and practices that the General Assembly has prohibited as unfair or deceptive. The General Assembly also authorized the Attorney General to adopt rules that define "with reasonable specificity" what is an unfair and deceptive act or practice. R.C. 1345.05(B)(2). Pursuant to that authority, the Attorney General has adopted Ohio Adm.Code 109:4-3-16(B)(14), which states, in pertinent part:

> It shall be a deceptive and unfair act or practice for a dealer * * *, in connection with the advertisement or sale of a motor vehicle, to:
>
> * * *
>
> (14) Fail to disclose prior to the dealer's obtaining signature by the consumer on any document for the purchase of the vehicle, *any defect and/or the extent of any previous damage to such vehicle, retail repair cost of which exceeds or exceeded six per cent of the manufacturer's suggested retail price,* excluding damage to glass, tires and bumpers where replaced by identical manufacturer's original equipment. * * *

(Emphasis added.)

{¶15} The trial court found that Mr. Averback was entitled to summary judgment because Montrose violated this administrative rule. In particular, the court found that Montrose failed to disclose that the truck had a defect when the retail repair cost for the defect had

exceeded 6 percent of the manufacturer's suggested retail price for the truck. Montrose argues that the portion of the rule referencing retail repair costs in excess of 6 percent of the manufacturer's suggested retail price for the vehicle applies only to damage and not to defects. Montrose further argues that the rule requires disclosure of an existing defect, but not a previously repaired defect.

{¶16} Administrative rules are subject to the ordinary rules of statutory construction. *Ohio Edison Co. v. Power Siting Comm.*, 56 Ohio St.2d 212, 216 (1978), fn. 3. "Issues of statutory interpretation present a question of law; thus, [this Court] do[es] not give deference to the trial court's determination in such matters." *State v. Cruise*, 185 Ohio App.3d 230, 2009-Ohio-6795, ¶ 5 (9th Dist.). Likewise, the interpretation of an administrative rule presents a question of law and is reviewed de novo on appeal. *Cincinnati v. Nicholson*, 1st Dist. Hamilton No. C-120332, 2013-Ohio-708, ¶ 8.

{¶17} "The primary goal in construing an administrative rule is to ascertain and give effect to the intent of the rule-making authority." *State v. Montague*, 4th Dist. Athens No. 12CA25, 2013-Ohio-5505, ¶ 9. To determine intent, courts look to the language used. *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.*, 124 Ohio St.3d 390, 2010-Ohio-169, ¶ 20. "'[W]here the language of a statute [or administrative rule] is clear and unambiguous, it is the duty of the court to enforce the statute [or administrative rule] as written, making neither additions to the statute [or administrative rule] nor subtractions therefrom.'" *Cruise* at ¶ 5, quoting *Hubbard v. Canton City School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, ¶ 14.

{¶18} In this case, both parties assert that the administrative rule is unambiguous and that rules of grammar apply to its interpretation. "The words and phrases contained in Ohio's

statutes and administrative regulations are to be given their plain, ordinary meaning and are to be construed 'according to the rules of grammar and common usage.'" *Clark v. State Bd. of Registration for Professional Engineers & Surveyors*, 121 Ohio App.3d 278, 284 (9th Dist.1997), quoting R.C. 1.42. One such rule of grammar is the last-antecedent rule.

**{¶19}** Montrose contends that the phrase, "retail repair cost of which exceeds or exceeded six per cent of the manufacturer's suggested retail price" in Ohio Adm.Code 109:4-3-16(B)(14), only modifies "damage" (and not "defect") under the last-antecedent rule. Montrose misapplies the rule. Under the rule, "'referential and qualifying words and phrases, where no contrary intention appears, refer solely to the last antecedent.'" *State ex rel. Prade v. Ninth Dist. Court of Appeals*, 151 Ohio St.3d 252, 2017-Ohio-7651, ¶ 15, quoting *Carter v. Youngstown Div. of Water*, 146 Ohio St. 203, 209 (1946).

**{¶20}** "The last antecedent is 'the last word, *phrase, or clause* that can be made an antecedent without impairing the meaning of the sentence.' Thus, a proviso usually is construed to apply to the *provision or clause* immediately preceding it." (Emphasis added.) 2A Singer, *Statutes and Statutory Construction*, Section 47:33, 369 (6th Ed.2000), quoting *In re Estate of Kurtzman*, 65 Wash.2d 260, 264 (1964). *See also Internatl. Bhd. of Elec. Workers v. Vaughn Industries, Inc.*, 156 Ohio App.3d 644, 2004-Ohio-1655, ¶ 41 (last antecedent was the preceding sentence). In addition, "[e]vidence that a qualifying phrase is supposed to apply to all antecedents instead of only to the immediately preceding one may be found in the fact that it is separated from the antecedents by a comma." Singer, *Statutes and Statutory Construction*, Section 47:33 at 369. *See also Wohl v. Swinney*, 118 Ohio St.3d 277, 2008-Ohio-2334, ¶ 35 (Pfeifer, J., dissenting), quoting *In re Sehome Park Care Ctr., Inc.*, 127 Wash.2d 774, 781-782

(1995) ("'the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one'").

**{¶21}** Here, the qualifying phrase is "retail repair cost of which exceeds or exceeded six per cent of the manufacturer's suggested retail price." Ohio Adm.Code 109:4-3-16(B)(14). Montrose incorrectly argues that the last antecedent to which that qualifying phrase refers is the word "damage." Montrose does not account for the fact that an antecedent can be a word, phrase, or clause. Moreover, the interpretation urged by Montrose discounts the placement of the comma before the qualifying phrase. Here, the antecedent to which the qualifying phrase refers is the phrase "any defect and/or the extent of any previous damage to such vehicle[.]" *Id.* The fact that the qualifying phrase is meant to apply to the entire phrase is made clear by the placement of the comma. Thus, the trial court correctly interpreted the section when it applied the 6 percent qualifier to the defect.

**{¶22}** Montrose would split the antecedent phrase and apply the regulation to require disclosure of "(1) any defect; and (2) the extent of any previous damage to a vehicle, retail repair cost of which exceeds or exceeded six percent of the manufacturer's suggested retail price." Not only does this reading of the regulation misapply the last-antecedent rule, it ignores the fact that the qualifying phrase contains the verb "exceed" in both the present tense and the past tense ("cost of which exceeds or exceeded six per cent * * *"). Ohio Adm.Code 109:4-3-16(B)(14). It is a basic rule of statutory construction that none of the words used should be ignored. *D.A.B.E., Inc. v. Toledo-Lucas Cty. Bd. of Health*, 96 Ohio St.3d 250, 2002-Ohio-4172, ¶ 26. Rather, the language "'must be construed as a whole and given such interpretation as will give effect to every word and clause in it. No part should be treated as superfluous unless that is manifestly required, and the court should avoid that construction which renders a provision meaningless or

inoperative."' *Id.*, quoting *State ex rel. Myers v. Bd. of Edn.*, 95 Ohio St. 367, 372-373 (1917). Montrose's reading of the regulation would render the word "exceeds" superfluous, as this present-tense verb cannot possibly refer to "previous damage."

**{¶23}** Nonetheless, Montrose latches onto the word "previous" as modifying the word "damage" to support its interpretation of Ohio Adm.Code 109:4-3-16-(B)(14). Montrose points out that "the reference to 'damage' in the regulation is modified by the adjective 'previous,' while the reference to 'defect' is not similarly modified." According to Montrose, this means that previous damage must be disclosed while a previous defect need not be. But this interpretation totally ignores the adjective "any," which modifies both defects ("any defects") and damage ("any previous damage") in the regulation.

**{¶24}** As already stated, the language used "'must be construed as a whole and given such interpretation as will give effect to every word[.]'" *D.A.B.E., Inc.* at ¶ 26, quoting *State ex rel. Myers* at 372-373. "'It is the duty of this court to give effect to the *words used* [in a statute], not to delete words used or *to insert words not used.*'" (Emphasis added.) (Alterations sic.) *State v. Jenkins*, 15 Ohio St.3d 164, 212 (1984), quoting *Bernardini v. Bd. of Edn.*, 58 Ohio St.2d 1, 4 (1979). Unless otherwise defined, the words used are "given their plain, ordinary meaning." *See Clark*, 121 Ohio App.3d at 284, citing R.C. 1.42. "[T]he ordinary meaning of 'any' is 'every' or 'all.'" *In re Foreclosure of Liens for Delinquent Land Taxes v. Parcels of Land Encumbered with Delinquent Tax Liens*, 140 Ohio St.3d 346, 2014-Ohio-3656, ¶ 14, citing *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 33.

**{¶25}** Applying this definition in the context of Ohio Adm.Code 109:4-3-16(B)(14) the conclusion to be drawn is that, by choosing the word "any," the Attorney General, as authorized by the General Assembly, chose to require that all defects be disclosed, provided that retail repair

cost exceeds or exceeded 6 percent of the manufacturer's suggested retail price. Had the Attorney General meant to address only defects existing at the time of the sale, he could have expressed that intention with the words "any existing defect." To adopt Montrose's argument that the regulation applies only to "existing defects" would effectively insert a word not used into Ohio Adm.Code 109:4-3-16(B)(14). Indeed, the fact that the Attorney General chose to insert the word "previous" before damage demonstrates that his intention was to narrow the expanse of the word "any" modifying "damage" to "any previous damage." He did not similarly restrict the use of the word "any" modifying "defect." Rather, the rule simply states "any defect" meaning "all" or "every" defect must be disclosed regardless of whether the defect was a "previous" defect or an "existing" defect.

{¶26} Finally, Montrose argues that the phrase "excluding damage to glass, tires and bumpers where replaced by identical manufacturer's original equipment" supports its interpretation of the administrative rule. Montrose argues that the rule includes this exclusion for damage to glass, tires, and bumpers, but "doesn't include an exclusion from disclosure for cured defective glass, tires, and bumpers because they are not required to be disclosed in the first instance, regardless of how much it cost to cure them." This argument is circular at best.

{¶27} In making this last argument, Montrose presupposes that it was not required to disclose a repaired defect, which is the very conclusion that it wishes this Court to draw. Not only is this argument circular, it is inconsistent with the balance of the regulation. Construing the regulation as a whole, aside from the 6 percent threshold, there are no exemptions from the duty to disclose "any defect." There are, however, certain exemptions from the duty to disclose "damage." The duty to disclose damage is limited to "any previous damage" and is nonexistent

altogether when the damage was to "glass, tires, and bumpers" that were subsequently "replaced by identical manufacturer's original equipment."

**{¶28}** Upon review, this Court concludes the trial court correctly interpreted Ohio Adm.Code 109:4-3-16(B)(14) as applying to all defects, whether previous or existing, where the retail repair cost was in excess of the 6 percent threshold. Montrose's first assignment of error is overruled.

**ASSIGNMENT OF ERROR NO. 2**

> THE TRIAL COURT INCORRECTLY ADOPTED THE MAGISTRATE'S DECISION AWARDING [MR.] AVERBACK ACTUAL DAMAGES OF $2,659.46, TREBLING THAT AMOUNT TO $7,978.38, AND AWARDING HIM NON[]ECONOMIC DAMAGES OF $500.00.

**{¶29}** In its second assignment of error, Montrose asserts that Mr. Averback failed to present sufficient evidence that he sustained any economic and noneconomic damages. Montrose also argues that the trial court applied an incorrect measure of damages in awarding economic damages. This Court agrees.

**Economic and Treble Damages**

**{¶30}** This Court generally reviews a trial court's action with respect to a magistrate's decision for an abuse of discretion. *Fields v. Cloyd,* 9th Dist. Summit No. 24150, 2008-Ohio-5232, ¶ 9. "In so doing, we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai,* 9th Dist. Medina No. 08CA0049-M, 2009-Ohio-3139, ¶ 18.

**{¶31}** Montrose challenges the measure of economic damages and the sufficiency of the damages evidence. The trial court's application of a measure of damages presents a legal question subject to a de novo review. *See Younker v. Hayes*, 9th Dist. Summit No. 28521, 2018-Ohio-835, ¶ 13. A sufficiency challenge also presents a question of law, which the appellate

court reviews de novo. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). *See YCS Concrete, Inc. v. Hixson*, 11th Dist. Trumbull Nos. 2003-T-0185, 2003-T-0186, 2005-Ohio-2081, ¶ 28-29 (a challenge to the sufficiency of the evidence requires the appellate court to review all the evidence admitted at the hearing or trial to determine if there was evidence of the essential elements of the case). "A de novo review requires an independent review of the trial court's decision without any deference to the trial court's determination." *State v. Consilio,* 9th Dist. Summit No. 22761, 2006-Ohio-649, ¶ 4.

**{¶32}** Mr. Averback argues that an abuse of discretion standard applies to a trial court's determination of a damages award. While that is an accurate statement of the law, it is not applicable to Montrose's stated assignment of error. Montrose is challenging the measure of damages and the sufficiency of the damages evidence and not the amount of damages awarded by the trial court. Thus, this Court will apply a de novo review.

**{¶33}** The Ohio Supreme Court has applied the same definition of sufficiency in both civil and criminal cases. *See Eastley* at ¶ 11, quoting *Thompkins* at 386. Sufficiency has been described as

> "'a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' * * * In essence, sufficiency is a test of adequacy."

*Eastley* at ¶ 11, quoting *Thompkins* at 386, quoting *Black's Law Dictionary* 1433 (6th Ed.1990). *Accord Baaron, Inc. v. Davidson*, 9th Dist. Wayne No. 13CA0050, 2015-Ohio-4217, ¶ 13; *Lynch v. Greenwald*, 9th Dist. Summit No. 26083, 2012-Ohio-2479, ¶ 20. "[A] challenge to the sufficiency of the evidence asks whether the plaintiff has met his or her burden of production by proving each element by a preponderance of the evidence." *Lynch* at ¶ 20. "When a defendant

argues that the judgment in a civil case is supported by insufficient evidence, we must determine whether, viewing the evidence in the light most favorable to the plaintiff, a reasonable trier of fact could find in favor of the plaintiff." *Lubanovich v. McGlocklin*, 9th Dist. Medina No. 12CA0090-M, 2014-Ohio-2459, ¶ 8.

{¶34} As a remedy for a violation of the CSPA, the consumer may rescind the transaction or seek actual economic damages and noneconomic damages. R.C. 1345.09(A). "'[A]ctual economic damages'" is defined as "damages for direct, incidental, or consequential pecuniary losses" arising from a violation of the CSPA. R.C. 1345.09(G). Actual economic damages, however, do not include damages for noneconomic loss. *Id.*

{¶35} If the CSPA violation has been declared a deceptive or unconscionable act or practice by a rule promulgated by the Attorney General pursuant to R.C. 1345.05(B)(2), or if a court order, made available for public inspection, had determined that a specific act or practice violated R.C. 1345.02, R.C. 1345.03, or R.C. 1345.031, then the consumer may either 1) rescind the transaction, or 2) recover treble damages of the amount of the actual economic damages or $200, whichever is greater, plus noneconomic damages up to five thousand dollars. R.C. 1345.09(B). "Under the Act, treble damages are punitive in nature, intended to deter a seller's wrongful conduct." *Reagans v. Mountainhigh Coachworks, Inc.*, 117 Ohio St.3d 22, 2008-Ohio-271, ¶ 34. "Whether treble damages are appropriate is a question of law[,]" which is reviewed de novo. *Fleischer v. George*, 9th Dist. Medina No. 09CA0057-M, 2010-Ohio-3941, ¶ 18.

{¶36} The Ohio Supreme Court has recognized that under R.C. 1345.09(B), the CSPA provides an alternative $200.00 statutory award for a CSPA violation in the event the consumer is unable to prove actual damages or the treble damages are less than $200.00. *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, ¶ 17. *See Warren v. Denes Concrete,*

*Inc.*, 9th Dist. Lorain Nos. 08CA009414, 08CA009422, 2009-Ohio-2784, ¶ 27. Thus, a consumer who proves a CSPA violation under R.C. 1345.09(B) is guaranteed a minimum award of $200.00 statutory damages. *Couto v. Gibson, Inc.*, 4th Dist. Athens No. 1475, 1992 WL 37800, *6 (Feb. 26, 1992).

{¶37} Montrose argues that the applicable measure of damages in this case is expectation damages, while Mr. Averback contends the measure of damages is reliance damages. Mr. Averback does not dispute Montrose's argument that he failed to present evidence of expectation damages. Instead, Mr. Averback asserts he presented sufficient evidence of reliance damages.

{¶38} CSPA claims essentially arise from contractual relationships, 1 Travalio, Troutman, and Judge, *Anderson's Ohio Consumer Law Manual*, Section 3.25 (2018), such as a breach of a warranty regarding a sale of goods, *Evans v. Cheek*, 65 Ohio App.3d 535, 536-537 (4th Dist.1989), or the fraudulent inducement to enter a contract, *Sabbatis v. Burkey*, 166 Ohio App.3d 739, 2006-Ohio-2395, ¶ 17 (5th Dist.). Accordingly, the measure of damages for a CSPA claim involving deception is the expectancy interest. *Anderson's Ohio Consumer Law Manual*, Section 3.25. This is "the difference between the value of property as it was represented to be and its actual value at the time it was received or purchased." *State v. Rose Chevrolet, Inc.*, 12th Dist. Butler No. CA91-12-214, 1993 WL 229392, *2 (June 28, 1993). Expectancy damages place the non-breaching party "in the position it would have been had the contract been fully performed." *Alternatives Unlimited-Special, Inc. v. Ohio Dept. of Edn.*, 10th Dist. Franklin No. 12AP-647, 2013-Ohio-3890, ¶ 29. Expectancy damages affirm the existence of the contract, *id.*, and the consumer retains the property and seeks compensation for the diminished value of the property. *Cremeans v. Robbins*, 4th Dist. Ross No. 99CA2520, 2000

WL 781215, *4 (June 12, 2000). This measure of damages is also referred to as the "'benefit of the bargain' rule." *See Rose Chevrolet* at *2; *Alternatives Unlimited-Special* at ¶ 29. Courts have held that repair and replacement costs are also included under the benefit of the bargain rule. *Bartholet v. Carolyn Riley Realty, Inc.*, 131 Ohio App.3d 23, 29 (9th Dist.1998) (Carr, J., dissenting), quoting *Brewer v. Brothers*, 82 Ohio App.3d 148, 154 (12th Dist.1992).

{¶39} When the non-breaching party is unable to prove expectation damages, it may instead seek reliance damages. *Alternatives Unlimited-Special* at ¶ 30. The trial court did not apply, nor did Mr. Averback seek, expectation damages. Instead, Mr. Averback sought reliance damages, and the trial court applied that measure of damages in awarding him actual economic damages.

{¶40} Reliance damages place the non-breaching party "in the position it was in before the contract was made." *Alternatives Unlimited-Special* at ¶ 29. Typically, reliance damages reimburse the non-breaching party for expenditures made in performing the contract. *Id.* at ¶ 31. Reliance damages in effect deny the existence of the contract, *id.* at ¶ 29, and there is no enforcement of the contract. *Cremeans* at *4.

{¶41} Reliance damages, however, are associated with the rescission of a transaction in a CSPA claim. *See Mid-America Acceptance Co. v. Lightle*, 63 Ohio App.3d 590, 599-600 (10th Dist.1989).

> R.C. 1345.09(B) allows the consumer who has been fraudulently induced to enter into a contract either to rescind that contract and return the parties to the position in which they would have been if there had been no contract [reliance damages] or retain the contract and sue for damages based upon the fraudulent inducement [expectancy damages].

*Id.* Rescission returns the parties to status quo and "it necessarily follows that the defrauded party is entitled to [also] recover whatever he has already paid on the contract." *Id.* at 599.

**{¶42}** Mr. Averback sought recovery of his out-of-pocket expenses in performing the contract, namely the return of his down payment and the negative equity he incurred on his trade-in when he purchased the truck from Montrose. Mr. Averback admitted exhibits and testified as to both of these amounts at the damages hearing. Additionally, the admitted exhibits reflected the purchase price of the truck. Further, Mr. Averback testified that he would not have purchased the truck had Montrose disclosed the defect repair. Mr. Averback provided no other evidence of actual economic damages. At the close of Mr. Averback's evidence, Montrose moved to limit the economic damages judgment to the $200.00 statutory limit. Mr. Averback opposed Montrose's motion on the basis that he was seeking alternative damages and not expectancy damages.

**{¶43}** Mr. Averback contends that expectancy damages are not the only measure of damages available and that consumers are entitled to all damages flowing from the deceptive conduct. He argues that his out-of-pocket expenses for his down payment and negative equity are a result of his "reliance upon Montrose's deceptive conduct" and "recovery of this amount places him in the same position as if Montrose's deceptive conduct never occurred."[1]

**{¶44}** While Mr. Averback did not provide a label for the type of economic damages that he sought, the evidence he presented at the damages hearing regarding his out-of-pocket expenses, as well as his argument and case law cited in his appellate brief, all support a theory of reliance damages in connection with rescinding the transaction. *See Alternatives Unlimited-Special*, 2013-Ohio-3890, at ¶ 29, 31; *Mid-America Acceptance Co.*, 63 Ohio App.3d at 599.

---

[1] In addition to reliance damages, Mr. Averback presented other alternative damages arguments and case law to the trial court in his post-hearing damages brief and his response to Montrose's objections to the magistrate's decision. However, Mr. Averback abandoned those alternative arguments and limited his argument on appeal to reliance damages. This Court's review is limited accordingly.

Although Mr. Averback did not specifically request rescission of the transaction, his request for reliance damages implied such an election of remedy at the damages hearing.

{¶45} Mr. Averback's position at the damages hearing, however, was inconsistent with the procedural and historical facts of the case. In October 2013, Mr. Averback traded the truck into another dealership. Thus, at the time of the damages hearing, Mr. Averback no longer possessed the truck. Accordingly, rescission of the purchase of the truck from Montrose was not an available remedy. *See Borror v. MarineMax of Ohio, Inc.*, 6th Dist. Ottawa No. OT-06-010, 2007-Ohio-562, ¶ 31; R.C. 1345.09(C)(1) (rescission not available if there has been a substantial change in the subject of the transaction). This fact is further supported by the prayer for relief in Mr. Averback's third amended complaint wherein he requested actual and treble damages, and not rescission of the transaction. Because rescission was not an available remedy to Mr. Averback under the CSPA, neither were reliance damages. Despite there being evidence that his out-of-pocket expenses for his down payment and negative equity arose from the CSPA violation, Mr. Averback did not rescind the transaction and was precluded from seeking his reliance damages. Nonetheless, the trial court applied the incorrect measure of damages and awarded Mr. Averback his requested reliance damages and trebled the damages. *See Mid-America Acceptance Co.* at 599-600.

{¶46} Upon review of the testimony and exhibits admitted during the damages hearing in the light most favorable to Mr. Averback, this Court concludes that a reasonable trier of fact could not find in favor of Mr. Averback as to the economic and treble damages. Mr. Averback failed to present sufficient evidence of actual economic damages.

{¶47} Montrose's second assignment of error is sustained as to the economic and treble damages award. This matter is remanded to the trial court to award the mandatory statutory

damages available pursuant to R.C. 1345.09(B). *See Whitaker*, 111 Ohio St.3d 177, 2006-Ohio-5481, at ¶ 17; *Couto*, 1992 WL 37800, at *6.

**Noneconomic Damages**

{¶48} Montrose argues that the trial court's award of noneconomic damages is not supported by sufficient evidence because Mr. Averback failed to present evidence at the damages hearing that Montrose acted intentionally or maliciously when it failed to disclose at the time of purchase that the truck's engine had been replaced. In the alternative, Montrose argues that even if there was evidence that Montrose acted maliciously or intentionally, the noneconomic damages award is not supported by sufficient evidence that Mr. Averback suffered any mental anguish or emotional distress. This Court agrees with Montrose's first argument.

{¶49} R.C. 1345.09(B) also provides that a consumer may recover noneconomic damages up to $5,000.00 for a CSPA violation. The statute specifies that noneconomic damages are not the same as actual economic damages. R.C. 1345.09(G). Noneconomic damages are statutorily defined as

> nonpecuniary harm that results from an injury or loss to person or property that is a subject of a tort action, including, but not limited to, pain and suffering, loss of society, consortium, companionship, care, assistance, attention, protection, advice, guidance, counsel, instruction, training, or education, disfigurement, mental anguish, and any other intangible loss.

R.C. 2315.18(A)(4). *See* R.C. 1345.09(G).

{¶50} In *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, the Ohio Supreme Court recognized that a consumer in a CSPA action may be awarded noneconomic damages based upon mental anguish or emotional distress when there is evidence that a supplier acted maliciously or intentionally. *Id.* at ¶ 31. Thus, *Whitaker* imposes an additional evidentiary requirement upon the consumer seeking to recover emotional distress

damages in a CSPA claim. *See Anderson's Ohio Consumer Law Manual*, Section 3.25, citing *Cassidy v. West Marine Prods., Inc.*, N.D.Ohio No. 1:05 CV 2223, 2007 U.S. Dist. LEXIS 45131, \*18-19 (June 20, 2007) (noneconomic damages denied in the absence of facts that the supplier's actions were intentional or malicious).

**{¶51}** The trial court awarded Mr. Averback "$500.00 in noneconomic damages for his frustration, aggravation, and inconvenience from a transaction he would not have otherwise made." In support of the noneconomic damages award, the trial court found that Montrose violated Ohio Adm.Code 109:4-3-16(B)(14) and that "deprived [Mr. Averback] of the choice to purchase the vehicle[.]"

**{¶52}** Mr. Averback argues that Montrose's silence as to the engine replacement is evidence of intentional conduct, because Mr. Averback testified at the damages hearing that he never would have bought the truck had he known about the engine replacement. Contrary to Mr. Averback's argument, a finding of a CSPA violation by Montrose was not the equivalent of a finding of intentional or malicious conduct by Montrose. *See Cook v. Newman Motor Sales*, 6th Dist. Erie No. E-09-028, 2010-Ohio-2000, ¶ 39 ("[T]he CSPA does not require malice to trigger a violation."). *See generally Anderson's Ohio Consumer Law Manual*, Section 3.25, citing *Cassidy,* 2007 U.S. Dist. LEXIS 45131, at \*18 *(Whitaker* imposed an additional evidentiary requirement of malicious or intentional conduct to recover noneconomic damages in a CSPA claim.). It was incumbent upon Mr. Averback to present evidence at the damages hearing that Montrose's silence as to the engine replacement was done maliciously or intentionally.

**{¶53}** Mr. Averback contends that the depositions of two Montrose employees and an affidavit from a Montrose employee that were submitted as evidence in support of the summary judgment briefs constituted evidence that Montrose's silence was intentional. Additionally, Mr.

Averback relies upon the trial court's discussion that Montrose had a formal policy not to disclose defect repairs to consumers as evidence of Montrose acting intentionally.

{¶54} Mr. Averback's position fails because he misconstrues the procedural posture of the case and the proper scope of evidence relative to a damages hearing. Mr. Averback moved for summary judgment on the issue of liability only as to various CSPA claims and requested a jury trial on the issue of damages. Because Mr. Averback limited his summary judgment motion to the issue of liability, the trial court properly limited its summary judgment decision to the issue of liability. *See Lehmier v. W. Reserve Chem. Corp.*, 9th Dist. Summit No. 28776, 2018-Ohio-3351, ¶ 46 (error to grant summary judgment on a basis not argued by the movant).

{¶55} Moreover, Mr. Averback's summary judgment motion did not seek judgment on the issue of whether Montrose acted intentionally or maliciously. Therefore, while the trial court referenced facts regarding Montrose's policy to not disclose defect repairs to consumers in its summary judgment decision, it did not make a finding regarding such conduct being intentional or malicious. *See Lehmier* at ¶ 46. Accordingly, no such finding existed prior to the damages hearing.

{¶56} Further, Mr. Averback's reliance in his appellate brief on the trial court's decision overruling Montrose's objections to the magistrate's decision as being evidence of intentional conduct is misplaced. That decision was rendered after the damages hearing. Accordingly, that decision was not evidence Mr. Averback could have relied upon at the damages hearing.

{¶57} The parties stipulated that "the only issue that remain[ed] to be tried * * * [was] the amount of damages, if any, to which [Mr. Averback was] entitled on his claim that [Montrose] violated O.A.C. §109:4-3-16(B)(14) by failing to tell him that the engine had been replaced in the vehicle he was purchasing before he bought it" and "that single issue w[ould] be

tried to the [c]ourt." To "try" means "[t]o examine judicially; to examine and resolve (a dispute) by means of a trial." *Black's Law Dictionary* 1555 (8th Ed.2004). The "damages hearing," was in fact a damages bench trial held before the magistrate. Therefore, it was necessary for the parties to present testimony and evidence at the hearing regarding all of the elements of the damages being sought.

{¶58} Both Mr. Averback and the trial court's ruling on the objections to the magistrate's decision erroneously premised their conclusion of intentional conduct upon deposition testimony and an affidavit submitted with the summary judgment briefs, but not admitted as evidence at the damages hearing. Under certain circumstances, Civ.R. 32(A) permits a party to submit a deposition transcript at a hearing or trial as evidence. Mr. Averback, however, did not admit any deposition testimony at the damages hearing, and thus was precluded from relying upon the earlier deposition testimony as evidence of Montrose's intentional or malicious conduct. Similarly, Mr. Averback did not attempt to admit the Montrose employee's affidavit as evidence of intentional conduct at the damages hearing, nor would he have been permitted to do so. *See Core v. Samurai Corp.*, 7th Dist. Harrison No. 13 HA 13, 2015-Ohio-5437, ¶ 39. Thus, Mr. Averback was precluded from relying upon the affidavit submitted in the summary judgment briefing as evidence to support his damages.

{¶59} The only evidence presented by Mr. Averback in support of his noneconomic damages was his testimony at the damages hearing that he has been "bothered" for three years and it "bothered [him] to go on the street by Montrose." Mr. Averback also testified that he is "untrustworthy [sic] of many people in dealings" and is now "very cautious" when "buying big ticket items[.]" Additionally, Mrs. Averback testified that Montrose's lack of disclosure has

placed a strain on their marriage. This was the entirety of Mr. Averback's evidence regarding noneconomic damages.

**{¶60}** While Mr. Averback presented evidence regarding emotional distress, he failed to present any evidence at the damages hearing that Montrose acted maliciously or intentionally when it failed to disclose the engine replacement. Nor is Mr. Averback's testimony that he would not have purchased the truck had he been informed of the engine replacement evidence of intentional or malicious conduct by Montrose to support noneconomic damages.

**{¶61}** Upon review of the testimony and the exhibits admitted during the damages hearing in the light most favorable to Mr. Averback, this Court concludes that a reasonable trier of fact could not find in favor of Mr. Averback as to the noneconomic damages. Mr. Averback failed to present sufficient evidence of malicious or intentional conduct to support an award of noneconomic damages.

**{¶62}** Montrose's second assignment of error is sustained as to the noneconomic damages award.

### ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT INCORRECTLY ADOPTED THE MAGISTRATE'S DECISION AWARDING [MR.] AVERBACK ATTORNEY'S FEES OF $23,845.00, PLUS $2,035.54 FOR FILING FEES AND COSTS INCURRED.

**{¶63}** In its third assignment of error, Montrose argues that Mr. Averback failed to present sufficient evidence that Montrose knowingly violated the CSPA in order to support an award of attorney's fees. Additionally, Montrose asserts that attorney's fees are improper in the event the first assignment of error is sustained. Lastly, Montrose contends that attorney's fees and filing fees and costs should be reduced based upon Mr. Averback's rejection of its offer to

cure and his lack of economic damages. This Court agrees with Montrose's first argument as to attorney's fees and its last argument as it pertains to filing fees and costs.

**Attorney's Fees**

{¶64} An award of attorney's fees pursuant to R.C. 1345.09(F)(2) should not be reversed absent a showing of an abuse of discretion. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). The abuse of discretion standard is applied to challenges regarding the amount and reasonableness of the attorney's fees and to the general decision of whether to award attorney's fees. *Id.*; *Charvat v. Ryan*, 116 Ohio St.3d 394, 2007-Ohio-6833, ¶ 27. Montrose is not challenging the discretionary authority of the trial court to award attorney's fees, but instead is challenging the sufficiency of the evidence regarding the requirement that the supplier knowingly committed a CSPA violation. Accordingly, this Court applies a de novo standard of review as addressed above.

{¶65} R.C. 1345.09(F)(2) provides that a court may award reasonable attorney's fees to the prevailing party if "[t]he supplier has knowingly committed an act or practice that violates [the CSPA]." While the trial court has discretion to award attorney's fees, it can only do so upon an additional finding "that the supplier acted 'knowingly' in committing the deceptive/unconscionable act or practice." *Cartwright v. Beverly Hills Floors, Inc.*, 7th Dist. Mahoning No. 11 MA 109, 2013-Ohio-2266, ¶ 41. *See Cassidy*, 2007 U.S. Dist. LEXIS 45131, at * 17. However, "the 'knowing' commission of an act that violates R.C. Chapter 1345 does not mandate imposition of attorney's fees." *Charvat* at ¶ 27. *See Warren*, 2009-Ohio-2784, at ¶ 37.

{¶66} The CSPA defines "'[k]nowledge'" as "actual awareness, but such actual awareness may be inferred where objective manifestations indicate that the individual involved acted with such awareness." R.C. 1345.01(E). The Ohio Supreme Court has interpreted

"'knowingly'" to mean "the supplier need only intentionally do the act that violates the Consumers Sales Practices Act." *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 30 (1990). This Court has stated that "[a]cting 'intentionally' means 'to do something purposely, and not accidently.'" *Crow v. Fred Martin Motor Co.*, 9th Dist. Summit No. 21128, 2003-Ohio-1293, ¶ 44, quoting *Black's Law Dictionary* 810 (6th Ed.1990). To demonstrate a knowing violation of the CSPA to support an award of attorney's fees, the consumer "need not prove that the [supplier] knew that conduct violated the law but only that the [supplier] knew the underlying facts of the conduct." *Charvat* at ¶ 28.

{¶67} Montrose specifically argues that there was no evidence at the damages hearing as to "how the engine in the [truck] had come to be replaced" to support a finding that Montrose knowingly committed a CSPA violation. Mr. Averback does not dispute the lack of evidence at the damages hearing on this point. Instead, Mr. Averback again argues that there was evidence submitted to the trial court via the summary judgment briefs establishing that Montrose had a policy of not disclosing repaired defects and that Montrose repaired the defect prior to the sale of the truck. Mr. Averback asserts it would be a waste of judicial resources to require him to prove facts at the damages hearing that the trial court previously found. In awarding attorney's fees, the trial court based its determination that Montrose acted knowingly upon the following: 1) the affidavit of Montrose's general manager which was attached to Montrose's brief in opposition to summary judgment, and 2) the trial court's prior summary judgment ruling wherein it found that "[Montrose] acknowledged it replaced the engine prior to selling it to [Mr. Averback.]"

{¶68} The law and analysis addressed in assignment of error number two regarding evidence of intentional or malicious conduct for noneconomic damages and the use of summary

judgment evidence and the trial court's summary judgment ruling apply equally to this assignment of error.

{¶69} While the trial court's summary judgment decision listed facts regarding Montrose's policy to not disclose defect repairs and that the engine had been replaced, the trial court's summary judgment decision was limited to a liability determination that Montrose violated the CSPA and made no explicit finding that the CSPA violation was committed knowingly. Nor was there an implicit finding that the CSPA violation was committed knowingly, as the trial court did not award attorney's fees in the summary judgment decision. As previously noted, such a finding, explicit or implicit, would have been an improper damages decision because Mr. Averback did not seek summary judgment on damages. *See Lehmier*, 2018-Ohio-3351, at ¶ 46. Because the summary judgment decision did not contain a finding that Montrose knowingly committed the CSPA violation, it could not be relied upon as evidence of this necessary damages element.

{¶70} Nor could the summary judgment depositions and affidavits be relied upon because they were not admitted into evidence at the damages hearing. The parties stipulated that the sole purpose of the hearing was to determine Mr. Averback's damages, if any. Because Mr. Averback was seeking attorney's fees, he was required to present, albeit a second time,[2] testimony or exhibits at the damages hearing establishing the necessary element that Montrose knowingly committed the CSPA violation. Mr. Averback, however, presented no such evidence at the damages hearing.

---

[2] Knowingly committing a CSPA violation is a necessary element of attorney's fees damages. *See Cartwright*, 2013-Ohio-2266, at ¶ 41. Thus, Mr. Averback was not required to present such evidence in his summary judgment motion on liability.

{¶71} Upon review of the testimony and the exhibits admitted during the damages hearing in the light most favorable to Mr. Averback, this Court concludes that a reasonable trier of fact could not find in favor of Mr. Averback as to attorney's fees. Mr. Averback failed to present sufficient evidence that Montrose knowingly committed a CSPA violation to support an award of attorney's fees.

{¶72} Additionally, Montrose argues that in the event the first assignment of error concerning the liability determination is reversed that the attorney's fees award must also be reversed as a matter of law. In light of this Court's affirmance of the first assignment of error as to the issue of liability, this argument is moot.

{¶73} Lastly, Montrose argues in the alternative that pursuant to R.C. 1345.092 the attorney's fees award should be modified to limit Mr. Averback's award of attorney's fees to those which he incurred prior to January 6, 2014. Based on this Court's resolution of the sufficiency argument relative to the attorney's fees, we decline to address Montrose's alternative argument regarding the attorney's fees award as it has been rendered moot. *See* App.R. 12(A)(1)(c).

{¶74} Montrose's third assignment of error is sustained as to the attorney's fees award.

**Filing Fees and Costs**

{¶75} Montrose's third assignment of error also challenges the award of filing fees and costs on the basis that the court costs should be reduced to include only those that were incurred prior to January 6, 2014. Montrose relies upon R.C. 1345.092(G)(1)-(3), which states that when an offer to cure is rejected and the award of actual economic damages is less than that offered by the supplier, the consumer is precluded from recovering treble damages, as well as court costs and attorney's fees incurred after the consumer receives the offer to cure.

**{¶76}** Montrose offered Mr. Averback $1,800.00 in its offer to cure, which Mr. Averback rejected. The trial court originally awarded Mr. Averback economic damages in excess of Montrose's offer to cure and thus did not apply R.C. 1345.092 in its analysis of the court costs. In light of the resolution of assignment of error number two and our remand instructions to the trial court to award Mr. Averback $200.00 statutory damages, Mr. Averback's economic damages will be less than the amount presented in Montrose's offer to cure, thereby subjecting his award of court costs to the provisions of R.C. 1345.092(G)(2). Pursuant to this statute, Mr. Averback is not entitled to recover any court costs he incurred after the date his attorney received the cure offer from Montrose. *See* R.C. 1345.092(G).

**{¶77}** Montrose's third assignment of error is sustained as to the filing fees and costs award. This matter is remanded to the trial court to calculate the court costs to be awarded to Mr. Averback pursuant to R.C. 1345.092(G)(2).

### III.

**{¶78}** Montrose's first assignment of error is overruled. Montrose's second and third assignments of error are sustained. The judgment of the Summit County Court of Common Pleas is affirmed in part, reversed in part, and the cause is remanded for proceedings consistent with this opinion.

Judgment affirmed in part,
reversed in part,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed equally to both parties.

 

 

LYNNE S. CALLAHAN
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, P. J.
DISSENTING.

{¶79} I respectfully dissent from the judgment of the majority as I would sustain Montrose's first assignment of error.

{¶80} Unfortunately, the administrative code provision at issue is poorly drafted and even applying the plain language as written could lead to somewhat questionable results. The provision states:

> It shall be a deceptive and unfair act or practice for a dealer * * *, in connection with the advertisement or sale of a motor vehicle, to: * * * Fail to disclose prior to the dealer's obtaining signature by the consumer on any document for the

purchase of the vehicle, any defect and/or the extent of any previous damage to such vehicle, retail repair cost of which exceeds or exceeded six per cent of the manufacturer's suggested retail price, excluding damage to glass, tires and bumpers where replaced by identical manufacturer's original equipment.

Ohio Adm.Code 109:4-3-16(B)(14). Thus, for example, the plain language seems to require that, under certain circumstances, "previous damage" must be disclosed but not existing damage, notwithstanding the fact that existing damage could be difficult for the average consumer to detect depending on its location.

{¶81} Nonetheless, in examining the phrase at issue, irrespective of how the last-antecedent rule is applied, I would conclude that the trial court erred in concluding that Montrose violated Ohio Adm.Code 109:4-3-16(B)(14) by failing to disclose a defect. "In construing statutes, it is customary to give words their plain ordinary meaning unless the legislative body has clearly expressed a contrary intention. This maxim applies equally to administrative regulations." (Internal citation omitted.) *State ex rel. Brilliant Elec. Sign Co. v. Indus. Comm.*, 57 Ohio St.2d 51, 54 (1979). The term "defect" is not defined in the relevant portions of the administrative code or the statutory scheme. Accordingly, it is appropriate to use the common, ordinary meaning of the word. *Id.* The dictionary has defined "defect" as "an imperfection that impairs worth or utility." (Internal quotations omitted.) *Hamrick v. Bryan City School Dist.*, 6th Dist. Williams No. WM-10-014, 2011-Ohio-2572, ¶ 28, quoting *Merriam Webster's New Collegiate Dictionary* 302 (10th Ed.1996). Here, there was no evidence that, at the relevant time, the truck had a defect, i.e. "an imperfection that impair[ed] its worth or utility." *Hamrick* at ¶ 28. While the faulty long block engine would be considered a defect, it was replaced prior to the sales transaction. Thus, the evidence presented supports that the truck that Mr. Averback purchased did not have any defects. Accordingly, there was nothing for Montrose to disclose.

APPEARANCES:

CLAIR E. DICKINSON and CHRISTOPHER T. TEODOSIO, Attorneys at Law, for Appellant.

JOSEPH T. DATTILO, Attorney at Law, for Appellant.

ALEX MCCALLION and JUSTIN ALABURDA, Attorneys at Law, for Appellee.

ELIZABETH A. WELL, Attorney at Law, for Appellee.