[Cite as *Donovan v. Kirtland Country Club*, 2026-Ohio-1327.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## LAKE COUNTY

| | |
|---|---|
| SANDY DONOVAN, et al., | **CASE NO. 2025-L-049** |
| Plaintiffs-Appellants, | |
| - vs - | Civil Appeal from the Court of Common Pleas |
| KIRTLAND COUNTRY CLUB, et al., | |
| Defendant-Appellee. | Trial Court No. 2023 CV 001498 |

## OPINION AND JUDGMENT ENTRY

Decided: April 13, 2026
Judgment: Affirmed

*Eric W. Henry*, The Henry Law Firm, 8401 Chagrin Road, Suite 18, Chagrin Falls, OH 44023, and *Timothy P. Misny*, The Law Offices of Tim Misny, 3100 East 45th Street, Suite 444, Cleveland, OH 44127 (For Plaintiffs-Appellants).

*James M. Williams* and *Matthew S. Fennell*, Krugliak, Wilkins, Griffiths & Dougherty Co., L.P.A., 4775 Munson Street, N.W., Canton, OH 44718 (For Defendant-Appellee).

SCOTT LYNCH, J.

{¶1} Plaintiffs-appellants, Sandy and Kevin Donovan, appeal from the judgment of the Lake County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, Kirtland Country Club (KCC). For the following reasons, we affirm the judgment of the lower court.

{¶2} On November 1, 2023, the Donovans filed a complaint against KCC relating to its operation of a skeet shooting range, commencing in 2015 after the Willoughby Planning Commission approved a conditional use permit (CUP) for its operation. They alleged that the "shotgun blasts' intense and harmful decibel levels directly and adversely

affect Plaintiffs and their neighbors because Defendants unnecessarily shoot to the south, toward Kirtland." They contended that, although KCC made promises to decrease the sound in response to public complaints in 2016, no alterations were made to lower the decibel levels, which were in violation of Ohio law. The complaint raised claims for Public Nuisance, Private Nuisance, Nuisance Per Se, Qualified Nuisance, and Negligence. It sought injunctive and declaratory relief, requesting that KCC be barred from operating the shooting range until the range is reconfigured or safeguards are utilized "to ensure the decibel level does not exceed that prescribed by Ohio law." The court subsequently denied the Donovans' motion for a temporary restraining order and preliminary injunction.

{¶3}   KCC filed a March 4, 2024 motion to dismiss on several grounds, including violation of the statute of limitations and res judicata. The court denied the motion to dismiss. KCC filed an answer on May 23, 2024.

{¶4}   KCC filed a motion for summary judgment on December 17, 2024. It argued that it had immunity under R.C. 1533.85 from actions relating to noise produced by the skeet range. It also contended that the negligence claim was barred by the four-year statute of limitations and the nuisance claims failed because KCC's conduct was lawful and there was no breach of duty.

{¶5}   The following pertinent evidence and testimony were presented through the summary judgment motions and depositions:

{¶6}   Mark Petzing is the general manager of KCC. He testified that, around 2015, KCC decided to begin offering skeet shooting for its members and guests. At that time, KCC performed trial shooting and a sound study was conducted by HzW Environmental. KCC then sought a conditional use permit, which was granted and

became effective in July 2015, allowing KCC to operate the skeet shooting range seasonally. The range operates from November through March, on Saturdays from 10 a.m. to 4 p.m. and Sundays from 12 p.m. to 4 p.m., as permitted by the CUP. After operation began, Petzing became aware of noise complaints and, in 2018, KCC lowered the range and created a "bigger berm" to reduce noise. He indicated that sound testing showed this was successful. He testified that although he can hear the skeet shooting inside his office in the main building, it is not disruptive to his work.

{¶7} Sandy Donovan lives in a home in the area of KCC and can hear noise from the skeet shooting from her home. She began noticing this noise more than five years ago, when it scared her grandson and herself. Since that time, she has complained to various individuals, including council members and the KCC Board of Trustees, and attended protests with an entity called End the Noise.[1] She indicated that, at End the Noise meetings, people complained the "inconsistent noise" on Saturdays and Sundays bothered them. At city council meetings, a representative from KCC indicated that they would mitigate the noise but Sandy believed "they never went through with it." She testified that the noise interfered with her ability to enjoy her land and prevented her grandchildren from coming to her house. She takes anxiety medication before skeet shooting starts and her blood pressure goes up during shooting season. She waited to file suit because her physical, mental, and emotional injuries had "accumulated over the years" and she believed the problem would be remedied.

{¶8} Kevin Donovan, Sandy's husband, also complained and spoke at council

_____

1. End the Noise filed a complaint against KCC alleging violations of the conditional use permit. The trial court granted summary judgment in favor of KCC and its judgment was affirmed by this court in *End the Noise Inc. v. Kirland Country Club Co.*, 2021-Ohio-3474 (11th Dist.).

Case No. 2025-L-049

meetings about the noise. He investigated the mitigation efforts by visiting KCC around two years after the shooting started. He was shown a berm around a foot-high on the ground and was told there would be increased mitigation. He indicated that the shooting occurs in bursts, is not continuous, and prevents him from focusing and doing outdoor activities. He testified regarding mental and physical impacts the shooting had on him.

{¶9} A report from William Thornton of Thornton Acoustics was presented. Thornton conducted on-site testing and concluded that gun fire occurring on the KCC range produces sound levels throughout the community "on the order of 88-104 dBA [A-weighted decibels] when measured using the nationally standardized Peak sound pressure level" and "exceeds the ambient sound level by 36-64 dB(A)." He concluded that the "gun noise is sufficiently loud and in excess of the ambient to severely interfere with the peace and enjoyment of the residential properties." He indicated that firearm noise should be measured with Peak sound pressure "to characterize the levels in a way that can be meaningfully compared to the human perception of loudness." He also opined that "noise levels significantly lower than the" limits set forth in Ohio Adm.Code 1501:31-29-03, which designates noise limits for shooting ranges, "will produce significant deleterious community noise." He contended that the requirement of the Code to measure the amount of time the sound occurs is ineffective given the short duration of sound from a gunshot. The report concluded that the average sound level was 51-58 dBA while the peak levels were 88-104 dBA. Thornton observed that "[a]lthough the gun noise does not exceed the OH Code limits . . . this NRA guideline as adopted by Ohio is essentially impossible to violate by design." The trial court struck those comments opining on the effectiveness of the Ohio Administrative Code.

Case No. 2025-L-049

{¶10} Paul Taylor, a skeet shooter and manager of skeet shooting ranges, opined that KCC had complied with the terms of the conditional use permit and the range is reasonably constructed. He indicated that the shooting site on the property is "ideally located in terms of safety."

{¶11} The trial court issued a judgment entry on April 15, 2025, granting KCC's motion for summary judgment. It found that the claims were barred by the statute of limitations since the alleged nuisance was "permanent" and the Donovans were aware of it since 2015. It determined that there was no private nuisance since the harms were common to the public. It found no cognizable claim in public nuisance "when a conditional use permit was approved by Willoughby prior to the construction of the skeet range" and the range was operated in accordance with the permit. It found no genuine issue of fact as to absolute nuisance since the skeet range was operated in accordance with the law. It found no issue as to qualified nuisance given that the range was operated in accordance with the CUP, took place during the winter and not early in the morning or late at night, and no skeet pellets or debris were found outside of KCC's boundaries. It concluded that the Donovans did not demonstrate a violation of the noise regulations in R.C. 1533.85.

{¶12} The Donovans timely appeal and raise the following assignments of error:

{¶13} "[1.] The Trial Court Erred in Granting Summary Judgment on the Finding that the Donovans' Claims Were Barred by the Statute of Limitations.

{¶14} "[2.] The Trial Court Erred in Granting Summary Judgment on the Finding that the Conditional Use Permit Insulated KCC from a Private Nuisance Action.

{¶15} "[3.] The Trial Court Erred in Granting Summary Judgment on the Donovan[s'] Claims for Negligence and Qualified Nuisance Based on Negligence.

{¶16} "[4.] KCC is not Entitled to Statutory Immunity from Nuisance Actions Where the Standard is Unenforceable as a Matter of Law."

{¶17} The assignments of error will be addressed out of order for ease of discussion.

**Summary Judgment Review**

{¶18} Pursuant to Civil Rule 56(C), summary judgment is proper when (1) the evidence shows "that there is no genuine issue as to any material fact" to be litigated, (2) "the moving party is entitled to judgment as a matter of law," and (3) "it appears from the evidence . . . that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence . . . construed most strongly in the party's favor."

{¶19} A trial court's grant of summary judgment is reviewed by an appellate court under a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). "A de novo review requires the appellate court to conduct an independent review of the evidence before the trial court without deference to the trial court's decision." *Peer v. Sayers*, 2011-Ohio-5439, ¶ 27 (11th Dist.).

**Statutory Immunity for Shooting Range Owners and Operators**

{¶20} In their fourth assignment of error, the Donovans argue that statutory immunity for nuisance claims should not apply because "the standard for immunity is deeply flawed" and vague.

{¶21} R.C. 1533.85(A)(1) provides: "The owner, operator, or user of a shooting range is not liable in damages in a civil action to any person for harm that allegedly is caused by the creation of noise at the shooting range or the failure to limit or suppress

noise at the shooting range if the owner, operator, or user substantially complies with the chief's noise rules." "The chief's noise rules" are defined as "the rules of the chief of the division of wildlife that are adopted pursuant to section 1533.84 of the Revised Code and that pertain to the limitation or suppression of noise at a shooting range or to the hours of operation of shooting ranges." R.C. 1533.83(D).

{¶22} Adm.Code 1501:31-29-03 establishes those standards for shooting ranges:

> Private and public shooting ranges in Ohio should substantially comply with the listed noise or sound levels that are set to prevent hearing damage and eliminate nuisance noise complaints. Noise or sound level guidelines are described or explained in great detail in "The NRA Range Source Book, 2012 edition." For the purpose of the chief of the division of wildlife's standards for shooting ranges, the following noise or sound levels apply: Unacceptable: If the sound level exceeds ninety decibels dB(A) for one hour out of twenty-four hours or eighty-five decibels dB(A) for eight hours out of twenty-four hours and the sound measuring receiver is located at the boundaries of the range property.

Adm.Code 1501:31-29-03(B).

{¶23} There is no factual dispute that this standard is met by KCC. The Donovans' expert witness report concluded that "the gun noise does not exceed the OH Code limits" with an average of 51-58 dBA with peak levels of 88-104 dBA. Essentially, while shots may register above the 85 and 90 decibel level, they do not last for the time periods set forth in the Adm.Code. Thornton's conclusion was not that KCC violated the law but that the law "as adopted by Ohio is essentially impossible to violate by design."

{¶24} The Donovans raise various arguments against the enforceability of Adm.Code 1501:31-29-03(B). They argue that, as noted by Thornton, this standard does not take into account the impact of short but loud noises such as gunfire. They also contend that the NRA's standards cited in the noise regulations were likely related to physical injury rather than nuisance and that the NRA has abrogated its NRA Range

Case No. 2025-L-049

Source Book, 2012 edition and declared it was not to be used as a standards guide. We do not find that this invalidates Adm.Code 1501:31-29-03(B). The Code, regardless of its reference to the NRA Range Source Book, sets forth a specific unacceptable level of sound, that exceeding "ninety decibels dB(A) for one hour out of twenty-four hours or eighty-five decibels dB(A) for eight hours out of twenty-four hours." No action has been taken to amend Adm.Code 1501:31-29-03(B) at this time and it is still in effect; it is not altered by any decisions the NRA makes regarding its own documents. While the Donovans argue that the "Ohio Division of Wildlife refuses to correct" this standard, it cannot circumvent this decision by asking this court to substitute its judgment on issues of policy. "The primary goal in construing an administrative rule is to ascertain and give effect to the intent of the rule-making authority." (Citation omitted.) *Averback v. Montrose Ford, Inc.*, 2019-Ohio-373, ¶ 17 (9th Dist.). When an administrative rule is unambiguous, "it is the duty of the court to enforce [it] as written." (Citation omitted.) *Id.*; *see Arbino v. Johnson & Johnson*, 2007-Ohio-6948, ¶ 71 ("[t]his court is not the forum in which to second-guess such legislative choices"). There can be no question that those rights provided by the Second Amendment have been consistently recognized throughout Ohio law. The Ohio Supreme Court, in examining the history of the Second Amendment in this state, emphasized that "the right to possess and use certain arms under certain circumstances was widely recognized and uncontroversial" and significant rights of liberty and freedom are associated with the Second Amendment. *Arnold v. Cleveland*, 67 Ohio St.3d 35, 43-44 (1993). We decline to presume that the legislature intended a different interpretation that may be contrary to those rights when choosing to carve out an immunity defense particular to operators of shooting ranges. We do not find that the Donovans'

Case No. 2025-L-049

arguments permit this court to merely ignore the statutory immunity set forth by the legislature and in the Administrative Code.

{¶25} The Donovans also contend that the noise standard has been abrogated by the Sixth District. In *Szuch v. FirstEnergy Nuclear Operating Co.*, 2016-Ohio-620 (6th Dist.), the court found Adm.Code 1501:31-29-03(B)(1) to be unclear regarding whether the time should be measured as one cumulative hour or one consecutive hour, ultimately concluding that it meant one cumulative hour. *Id.* at ¶ 22. It then determined that the defendant failed to present evidence to substantiate whether this standard was satisfied. *Id.* at ¶ 28. The court concluded that "[t]his is clearly an area of opportunity for the Chief of the Division of Wildlife to promulgate rules which would lend greater clarity to the standard, and the means by which the sound can be measured to test compliance with that standard" but it did not conclude that the regulation was invalid or unenforceable as written if appropriate evidence is presented. *Id.* at ¶ 27. The Donovans do not argue that the shooting totaled an hour cumulatively under any measurement method and their expert conceded that "the gun noise does not exceed the OH Code limits."

{¶26} The Donovans also argue that Adm.Code 1501:31-29-03(B) is not enforceable due to vagueness. "An enactment is void for vagueness if its prohibitions are not clearly" set forth and it does not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *In re Complaint Against Harper*, 77 Ohio St.3d 211, 221 (1996).

{¶27} It is noteworthy that the vagueness doctrine generally applies to protect the person or entity subject to the statute, in this case, KCC. The provisions challenged for vagueness must give a party the reasonable opportunity to know what is prohibited.

Case No. 2025-L-049

(Citation omitted.)  *Norwood v. Horney*, 2006-Ohio-3799, ¶ 83.  Here, KCC was able to comply with the provisions set forth in the statute and Administrative Code and does not contend that it was unable to do so due to vagueness.

{¶28}  It should also be observed that the Donovans' argument under this assignment tends to undercut their position.  Were the Adm.Code noise code provision that they question to be invalidated, there would be no ground under which to argue a noise violation occurred for the purpose of refuting the statutory provision.

{¶29}  Nonetheless, in the present matter, the statute and accompanying Adm.Code section are not unenforceable as they set forth the terms required to gain immunity for running a shooting range.  This court had held that a law is not unconstitutionally vague when it fails to define a term: "Although the zoning resolution could have been better drafted by including such a definition, it is not void merely because it could be more precisely worded."  *Machnics v. Sloe*, 2008-Ohio-1133, ¶ 38 (11th Dist.).  While it would have been useful to explain how to measure the one-hour timeframe, Adm.Code 1501:31-29-03 sufficiently alerts parties of what requirements must be met for immunity.

{¶30}  The fourth assignment of error is without merit.

**Breach of Duty for Negligence**

{¶31}  In their third assignment of error, the Donovans argue that the trial court erred in finding that they failed to raise a factual issue on negligence and qualified nuisance.  They argue that evidence was presented to demonstrate KCC breached its duty to act in the manner of a reasonably prudent entity.

{¶32}  Initially, we note that the Donovans argue negligence claims are not subject

Case No. 2025-L-049

to statutory immunity and thus, the fourth assignment of error is not dispositive on issues relating to negligence.  In so arguing, they cite R.C. 1533.85(A)(2)(d): "Division (A) of this section **does not confer an immunity from civil liability in relation to an owner's, operator's, or user's actions or omissions that constitute negligence**, willful or wanton misconduct, or intentionally tortious conduct if those actions or omissions are not the subject of the chief's noise rules or are not in substantial compliance with the chief's noise rules."  (Emphasis sic.)  While they emphasize the language that the statute does not confer immunity in relation to acts that constitute negligence, we observe that the remaining language states only that immunity for negligence is not conferred if the acts giving rise to negligence "are not the subject of the chief's noise rules."  Since the alleged acts of negligence here are essentially the same as the nuisance acts and relate to the noise from the skeet shooting, it would appear R.C. 1533.85 applies.  The Donovans argue that "nuisance is the subject of Adm. Code 1501:31-29-03" but that section only defines the rules for shooting ranges and does not set which actions are subject to immunity.

{¶33}  Nonetheless, even presuming immunity does not apply, we do not find an issue of material fact existed as to negligence.  It has been held that, for claims of negligence/qualified nuisance, "the standard of care is that care that a prudent man would exercise in preventing potentially or unreasonably dangerous conditions to exist; it is the same standard of care required of owners and occupiers of land toward business invitees," i.e., the duty is "to exercise ordinary or reasonable care . . . so that the premises are kept in a reasonably safe condition."  (Citation omitted.)  *Kramer v. Angel's Path, L.L.C.*, 2007-Ohio-7099, ¶ 23 (6th Dist.).  A claim for qualified nuisance, "or a nuisance

Case No. 2025-L-049

dependent on negligence," arises from an act "lawfully but so negligently or carelessly done as to create a potential and unreasonable risk of harm, which in due course results in injury to another." *Metzger v. Pennsylvania, Ohio & Detroit RR. Co.*, 146 Ohio St. 406 (1946), paragraph two of the syllabus.

{¶34} The Donovans' argument primarily relates to the impact the noise has on themselves and the community. Even presuming injury to the Donovans, the issue is whether KCC breached a duty to exercise reasonable care. The facts presented through summary judgment raise no issue as to the reasonableness of KCC's behavior. KCC operates a shooting range that complies with the noise regulations set forth in R.C. 1533.85 and Adm.Code 1501:31-29-03. It obtained a conditional use permit and no allegations were made that it breached the terms of that permit. There were no allegations that it allowed shooting outside of the range or with ammunition or firearms that would be louder than generally used in such a range. We cannot conclude that allowing skeet shooting on one's property in a manner that would provide immunity under the law breaches a duty of care such that negligence would apply. Regardless of whether the loud noises caused harm or irritation to the Donovans and others residing near KCC, it does not follow that KCC acted negligently. It is evident the Ohio legislature did not find operating a skeet shooting range in and of itself to be a negligent act or act in violation of the law in the absence of something more.

{¶35} The third assignment of error is without merit.

**Statute of Limitations for Permanent or Continuing Nuisance and Permits as a Defense for Private Nuisance**

{¶36} In their first assignment of error, the Donovans argue that the trial court erred in finding that their claims were barred by the statute of limitations because there is

a question of fact as to whether KCC's conduct was continuing or permanent. In their second assignment of error, the Donovans argue that the trial court erred in finding that the CUP insulated KCC from a private nuisance action.

{¶37} Our resolution of the Donovans' third and fourth assignments of error is dispositive. Having determined that KCC is entitled to statutory immunity from nuisance claims under R.C. 1533.85(A)(1) and that no genuine issue of material fact exists as to negligence or qualified nuisance, the Donovans' first and second assignments of error are rendered moot. Accordingly, we decline to address whether the trial court erred in finding the claims barred by the statute of limitations or in finding that the conditional use permit insulated KCC from a private nuisance action.

{¶38} The first and second assignments of error are moot.

{¶39} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, granting summary judgment in favor of KCC, is affirmed. Costs to be taxed against appellants.

MATT LYNCH, P.J.,

EUGENE A. LUCCI, J.,

concur.

Case No. 2025-L-049

# JUDGMENT ENTRY

For the reasons stated in the Opinion of this court, the assignments of error are without merit. The order of this court is that the judgment of the Lake County Court of Common Pleas is affirmed.

Costs to be taxed against appellants.

_____
JUDGE SCOTT LYNCH


_____
JUDGE MATT LYNCH,
concurs


_____
JUDGE EUGENE A. LUCCI,
concurs

---

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

---

Case No. 2025-L-049